THE LARIMER COUNTY DITCH COMPANY, APPELLANT, v. ZIMMERMAN, APPELLEE.

1. STATUTORY CONSTRUCTION.

In construing statutes, the evident intent of the legislature and the evils against which the statutes are directed, must be regarded.

2. SAME.

A person may be the owner of a reservoir within the meaning of the statute which provides that "the owners of reservoirs shall be liable for all damages," etc., (Mills' Ann. Stats., sec. 2272), although his interest therein be less than an absolute fee.

3. PLEADING.

In an action under the statute against the owner of a reservoir, it is not necessary to allege and prove negligence. A case is made *prima*

*facie*, at least, when the damage and cause,by the breaking of the reservoir, are established.

*Appeal from the District Court of Larimer County.*

Mr. GEORGE W. BAILEY and Mr. J. W. MCCREERY, for appellant.

Mr. E. A. BALLARD and Messrs. ROBINSON & LOVE, for appellee.

REED, J., delivered the opinion of the court.

The Larimer County Reservoir Company was the owner and in possession of some six reservoirs or reservoir sites upon the Cache La Poudre river in the upper part of that stream; some, but how many reservoirs were constructed or finished, how many in the course of construction and unfinished and of how many the work of construction had not been commenced, or which belonged to either class, is not shown by the evidence; among them was Chambers' Lake reservoir at the head of the stream, known as Number One.

On the 19th of September, 1882, the Larimer County Reservoir Company made the following lease to appellant:

" That said first party for and in consideration of the covenants and agreements hereinafter mentioned, to be kept and performed by said second party, has demised and leased to it, said second party, all those premises situate, lying and being in the county of Larimer and state of Colorada, known and described as follows, to wit: Reservoir Number One, Reservoir Number Two, Reservoir Number Three, Reservoir Number Four, Reservoir Number Five, Reservoir Number Six, Reservoir Number Seven, of said first party, as defined, located and described in its articles of incorporation on file in the office of the secretary of state and county clerk of Larimer county, Colorado; and also all rights, privileges and franchises of said first party acquired by it under its said articles of incorporation, and the acts and work of said cor-

poration taken and done under the same, including the dams at Chambers' lake—Reservoir One aforesaid—and the land under said lake or reservoir, and the land that may be overflowed by the same.

" To have and to hold the above described premises, privileges, rights and franchises with all appurtenances thereunto belonging or in any wise appertaining unto second party, its successors and assigns, from the date hereof, for, during and until the 19th day of September, A. D. nineteen hundred and one (1901). And said second party in consideration of the leasing of the premises, rights, privileges and franchises aforesaid, by said first party to said second party, does covenant and agree with said first party, its successors and assigns, as rent for said premises, rights, privileges and franchises, to complete the construction of said reservoir and dams for holding and drawing off the water from the same, and to keep and maintain the same in good repair during the term of this lease, at the cost and expense of said second party. And at the expiration of the time of this lease mentioned, said second party will yield up said premises, rights, privileges and franchises to said first party in as good order and condition as when the same were entered upon by the said second party, loss by inevitable accident or ordinary wear excepted."

Appellant entered into the possession of the demised premises, operated and controlled them from and after that date. On the 10th day of June, 1891, the wasteway of water in the natural soil adjoining the dam of the Chambers' Lake reservoir was washed out, an opening made 150 to 200 feet in width and of sufficient depth to discharge the large body of water contained in the reservoir into the river, causing a flood in the same, by reason of which appellee, a landowner living some miles below, alleged that he sustained damages to a large amount, for which he brought suit. The case was tried to a jury, resulting in a verdict and judgment for appellee for $1,350. There was but very little controversy as to the facts, except as to the amount of damage sustained, which was found as a fact by the jury, and it is not urged in

argument that it was excessive.   The only error urged and
relied upon is in giving the following instruction :

"This is an action brought by John Zimmerman against
The Larimer County Ditch Company to recover damages
which he says he has sustained by reason of the breaking of a
certain reservoir owned, operated and maintained, as he claims,
by the defendant.   The statute of this state provides that the
'owners of reservoirs shall be liable for all damages arising
from leakage or overflow of the waters therefrom, or by floods
caused by the breaking of the embankments of such reser-
voirs.'   The statute ·uses the word ' owner,' ·but you are
instructed,—if you believe from the evidence that the defend-
ant company had the sole charge, operation, maintenance
and control of the reservoir in question—that it is the owner
of the reservoir within the meaning of this statute.   If you
believe that the reservoir mentioned in the evidence either
broke its banks or overflowed, that it was owned by the de-
fendant company as I have heretofore instructed you as to
ownership, and that damage from the overflow resulted to
the plaintiff, it will be your duty to assess such damage as
may have been proven in evidence by the plaintiff."

It was contended upon the trial that appellant, being a
lessee of the reservoir in question, could not be held respon-
sible for the damage; the question was raised in several ways
and exceptions taken to the ruling of the court.

The only question to be determined by this court is whether
under the facts and evidence appellant could be held to be
an *owner*, the statute being, " The *owners* of reservoirs shall
be liable for all damages arising from leakage or overflow of
water therefrom, or by floods caused by the breaking of the
embankments of such reservoirs."   Mills' Ann. Stat. § 2272.

In construing statutes the evident intention of the legis-
lature and the evils against which the statutes are directed
must be regarded. . The damming and retaining of large
bodies of water at elevations sufficiently great to allow the
water to be used for purposes of irrigation, is at all times a
danger and continual menace to lower proprietors on the

course of the stream through which the water would find its natural outlet, and the danger has been emphasized by repeated disaster to life and property in this and other states. The inducement to secure water for the use of the person or for sale, at the most moderate expense in construction, has been so great that, regardless of the rights and dangers to others, many reservoirs were constructed with inadequate dams and auxiliaries. It was to guard against this abuse and compel the making substantial, and that they and their appliances should be constructed upon scientific principles and in such manner as to obviate the danger as far as human skill could do it and reduce it to a minimum. It had undoubtedly been found that by care and the expenditure of the requisite amount of money reservoirs could be made reasonably if not absolutely safe. To compel such construction and afford all the protection possible to property was the evident intention of the legislature. As before stated, to what extent construction of the reservoir in question had progressed at the time of the making of the lease has not been shown, but as the completion of the construction was made a part of the rental for some nineteen years and no cash rent was to be paid, it is safe to infer that a large amount of work was still necessary to complete the construction. If such were the case, there was no reservoir, but only a site at the time of leasing, and in any event the onus of proper construction and maintenance was cast upon the lessee. The word *owner* is rather embarrassing without qualification or assistance, and can only be construed in a legal or modified sense. An owner is defined in law to be, " He who has dominion over a thing which he may use as he pleases except as restrained by the law or by an agreement." *Dow v. Gold Mining Co.*, 31 Cal. 649. " Includes any person having a claim or interest in real property, though less than an absolute fee." *Lozo v. Sutherland*, 38 Mich. 171 ; See *Tyler v. Jewett*, 82 Ala. 98 ; *Schott v. Harvey*, 105 Pa. St. 229 ; *Davis v. Cincinnati*, 36 Ohio St. 26.

Not only the burden of maintaining but that of construction was cast upon the lessee, and it was in the absolute

control and possession of the property at the time of the injury, and had been for eight years.   Considering the intention of the act and the modified definitions of the word owner in many judicial decisions, we are clearly of the opinion that an estate less than an absolute fee would render a party liable, and that the intention of the legislature was to hold responsible the parties whose duty it was to construct and maintain.    To construe the statute otherwise would defeat the legislative intent, and might in any instance prevent redress to the injured party.

Whether or not the statute is absolute, and fixes the responsibility regardless of conditions and circumstances, and makes the owner an insurer against any damage caused by breakage, the act of God or unprecedented floods, against which human foresight was powerless, we are not called upon to decide; the issue was not made by the pleadings nor tried by the jury.   Some evidence was introduced to show unusual fall and volumes of water in the tributary streams above the reservoir, but the testimony was meager, unsatisfactory and partially contradictory.   Without going further, we think it safe to say that, from the wording of the statute and the evident intention of the legislature, it is sufficiently absolute to relieve the plaintiff from alleging and proving negligence and cast upon the defendant the onus of exonerating itself. By the terms of the statute the plaintiff is not required to allege or prove negligence; *prima facie*, at least, a case is made when the damage and cause, by the breaking of the reservoir, are established.

In these views of the case, we think the instruction objected to was correct, and that the judgment should be affirmed.

*Affirmed.*