CHARLES COHEN *vs.* BROCKTON SAVINGS BANK.

Plymouth.    December 4, 1946.— January 30, 1947.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & RONAN, JJ.

*Dangerous Use of Property.*

The owner of a lot and of a building, occupied by various tenants and heated by a steam heating plant maintained by him, was not liable to one of the tenants for damage by water caused to be pumped by an automatic pump from the pit in which the heater was located onto the lot, whence it flowed into the tenant's premises, solely by reason of an act of vandalism by a trespasser on the premises, which the owner had no reason to anticipate, in opening a drain-off valve on the heater, where it appeared that the owner was not negligent respecting such occurrence and that, in normal operation, the arrangement for pumping out the pit was proper and adequate and would not have caused the improper collection of water on the lot or flowage into the tenant's premises.

TORT. Writ in the District Court of Brockton dated June 30, 1945.

The case was heard by *Rowe*, J.

*J. E. Handrahan,* (*S. Smolensky* with him,) for the plaintiff.

*E. J. Campbell,* (*A. C. Doyle* with him,) for the defendant.

DOLAN, J. This action of tort is brought to recover compensation for damage to the plaintiff's merchandise caused by an influx of water into the basement of a building, owned by the defendant, where the merchandise was stored. The trial judge found for the defendant, and the case comes before us on the plaintiff's appeal from the order of the Appellate Division dismissing the report.

The evidence in the case discloses the following facts: The defendant was the owner of the Masonic Building on Centre Street in Brockton. The plaintiff was a tenant therein and was the owner of the merchandise before referred to. The building in question was occupied by various tenants, and the defendant provided heat for the entire structure. For that purpose it maintained a steam heating plant in the basement of the building. The boiler was supplied with water from the public water system, and was installed in a pit located several feet below the level of the basement floor. An automatic pump was maintained in the pit with the boiler for the purpose of keeping the pit dry in the event that there should be a seepage of water into the pit. The pump was designed to operate when the water reached a certain level in the pit. Attached to the pump was a pipe designed to convey and discharge the water pumped from the pit onto the ground of a vacant lot owned by the defendant at a point approximately fifteen feet from the northerly wall of the building in question. Adjacent to the north wall in the rear of the building was a ditch or moat about three feet wide and four feet six inches deep. Its purpose was to permit light to enter the basement. The vacant lot was saucer shaped, and on previous occasions the discharged water gathered in its center and seeped down into the ground. This arrangement was proper and adequate in normal circumstances, and water had not flowed

into. any of the basement rooms on any prior occasion. On February 28, 1945, the vacant lot was covered with an accumulation of snow and ice. During the night of that day the drain-off valve of the boiler was opened by a vandal, who had broken into the building. The pit began to fill up with water, the automatic pump operated at the prescribed level, and water was discharged at the point above mentioned but flowed under the accumulation of snow and ice in an easterly direction and then in a southerly direction into the moat and into the premises occupied by the plaintiff, flooding them and causing substantial damage to his merchandise. There was also evidence that the boiler was equipped with an automatic stoker, that no janitor service was required during the night, and that while the water was being discharged, as before noted, an officer or servant of the defendant arrived on the scene and by the use of a hose diverted the flow of water from the basement.

All of the plaintiff's requests for rulings were granted by the judge except his second and sixth requests. They follow: "2. The discharging of water from the defendant's boiler room in the manner disclosed by the evidence imposes an absolute liability on it, without proof of negligence, and irrespective thereof, and the condition that it thus created on the premises where the plaintiff's merchandise and effects were stored, was, as matter of law, a nuisance." "6. Upon all the evidence the finding should be for the plaintiff." In passing upon these requests the judge made preliminary findings that there was no evidence of negligence on the part of the defendant, that under normal circumstances "no water would have flowed upon the plaintiff's premises," and that an act of vandalism by a third person, over whom the defendant had no control, was the proximate cause of the damage which otherwise would not have occurred. The disposition of the plaintiff's second request by the judge follows: "Plaintiff's request No. 2 is denied. The request is .double. If I am in error on this point and ought to rule on. both negligence and nuisance then I .rule as. follows: (a)· As to negligence: I rule that on my findings there is no absolute liability without proof of negligence and as above,

stated I find there was no negligence. (b) As to nuisance: while I do not find a nuisance as a matter of fact, if a nui-. sance existed as matter of law as is asked for in the request, then I find that none existed for which the defendant is liable to the plaintiff under the facts found as stated in this memorandum, and particularly as I find that the defendant had no reason to anticipate the act of vandalism. . . . I find that the case at bar 'falls under the exception stated in *Gorham* v. *Gross*, 125 Mass. 232 (at 238), to the rule invoked by the plaintiff.' " As to the plaintiff's sixth request the judge denied the same as seeking in effect a ruling that as matter of law the plaintiff is entitled to a finding.

Without referring specifically in his brief to the action of the judge on these requests for rulings, the plaintiff, citing *Shipley* v. *Fifty Associates*, 106 Mass. 194, has simply argued generally that no man has a right to collect upon his own land water or anything else which, when it gets out of control, is harmful, and then suffer it to be discharged onto his neighbor's land, and that he must keep it in at his peril.

The denial of the plaintiff's requests for rulings in question was not erroneous. The general rule, that whoever for his own purposes brings on his land and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape (*Shipley* v. *Fifty Associates*, 106 Mass. 194, 198; *Gorham* v. *Gross*, 125 Mass. 232, 238), is subject to the following exceptions: the plaintiff's own fault, the act of God, or the acts of third persons which the owner had no reason to anticipate. *Bratton* v. *Rudnick*, 283 Mass. 556, 560, 561, and cases cited. In the instant case the judge has specifically found that there was no negligence on the part of the defendant; that, as agreed by the parties at the trial before him, a vandal broke into the basement of the defendant's building and opened the drain-off valve; and that this act of vandalism, which the defendant had no reason to anticipate, by a third person of whom the defendant had no knowledge and over whom it had no control, was the proximate cause of the damage which otherwise would

not have occurred. These findings of fact made on oral evidence are not subject to review since it cannot be said rightly that they are not warranted upon any possible view of the evidence or that they are vitiated by error of law. *Bresnick* v. *Heath*, 292 Mass. 293. *Howard* v. *Malden Savings Bank*, 300 Mass. 208, 211. They are decisive of the present case under the established principles set forth in the cases to which we have referred above and the cases cited therein.

*Order dismissing report affirmed.*