WHEATLAND IRRIGATION DISTRICT, a
corporation, Appellant (Defend-
ant below),

v.

Bernard R. McGUIRE et al., Appellees
(Plaintiffs below),
and
Dean T. Prosser, Jr., and Harriot Prosser,
Appellees (Plaintiffs below).

No. 4353.

Supreme Court of Wyoming.

July 16, 1975.

William R. Jones and Raymond B. Hunkins, of Jones, Jones, Vines & Hunkins, Wheatland, for appellant.

John J. Rooney, of Rooney & Horiskey, Cheyenne, for appellees McGuires.

Byron Hirst, of Hirst, Applegate & Dray, Cheyenne, for appellees Prossers.

Before GUTHRIE, C. J., and McCLINTOCK and ROSE, JJ.

ROSE, Justice.

This matter comes to us on an appeal from a summary judgment entered in favor of the plaintiffs-appellees on the question of liability. The case was tried on the issue of damages alone.

The appellees urge that this appeal is out of time—a matter which will be considered in detail.

The defendant-appellant urges five separate points on the appeal, all but one of which are directed to alleged trial errors and, in view of our holding here, we deem it necessary to consider only one, namely —whether or not the lower court erred in granting a summary judgment for the appellees on the question of liability.

There was sufficient record showing at the time when the motion for summary judgment was argued and the judgment entered, to constitute an issue of material fact under Rule 56 of the Wyoming Rules of Civil Procedure. The lower court held, however, that judgment should be entered because, as a matter of law, the defendant-appellant was precluded from defending on the liability issue since it was admitted that the appellant's dam broke, releasing water, thus causing damage to the property of the appellees.

The appellant's proffered defense was to be that the dam's rupture was caused by an act of sabotage, and the affidavits of expert witnesses on file were sufficient to raise the factual issue. The lower court held that the appellant was precluded from making such a defense by our § 41–46, W. S.1957, the effect of this ruling being that the aforesaid statute imposes such absolute liability as to make the defendant reservoir owner an insurer against the consequences of escaping water.

## APPELLEES' CONTENTION THAT THE APPEAL ON THE ISSUE OF LIABILITY IS OUT OF TIME

Appellees-McGuires urge that these proceedings should be dismissed for the reason that an appeal on the issue of liability is now precluded since the summary judgment entered in favor of the plaintiffs-appellees was a final order from which a separate appeal could have and should have been taken and, failing which, it is contended, the appellant-defendant is now out of time.

We find the contention to be without merit.

On March 29, 1971, the court made and entered a summary judgment on the issue of liability alone, leaving unresolved the question of damages. The motion for summary judgment was made under and by authority of Rule 56(c) of the Wyoming Rules of Civil Procedure, but counsel for appellees-McGuires now urges that even though the motion was one for summary judgment on liability alone, leaving for determination the damage issue, the judgment entered upon the motion should be treated as though it were a Rule 54(b) judgment and therefore a final appealable order as required and provided for in Rule 72(a) of the Wyoming Rules of Civil Procedure.

Rule 54, W.R.C.P., permits the court to enter a final judgment:

"When *more than one claim* for relief is presented in an action . . . ." [Emphasis ours]

". . . . or when multiple parties are involved, [in which case] the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties . . . ." [Bracketed material ours]

And as to these claims and these parties the judgment must be

"*the final determination of the rights of the parties in action.*" Rule 54(a), W. R.C.P. [Emphasis ours]

■ The judgment rendered in the instant matter does not fit any of the Rule 54 requirements.[1]

■ The judgment did not finally determine the rights of the parties—there was left undetermined the question of damages—the claim involved was not a *multiple* claim as required by the rule, but rather the pleadings presented a *single* claim with various issues delineated in connection therewith.[2]

Additionally, the summary judgment on the issue of liability alone entered into the record on March 29, 1971, did not qualify as a "final order" from which an appeal could be taken under Rule 72 of the Wyoming Rules of Civil Procedure, for the reason that it did not satisfy the requirements of sub-section (a) of that rule.[3]

At least as important as any of the above reasons for holding the summary judgment not to be an appealable order is that Rule 56(c) of the Wyoming Rules of Civil Procedure says that it is not final and therefore qualified as an appealable order.

The last mentioned rule provides in pertinent part:

"A summary judgment, *interlocutory* in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." [Emphasis ours]

This language means that a summary judgment, where liability is resolved but damages are left undetermined, is interlocutory and not a final order from which an appeal to this court may be taken. It could hardly be more clear.

In Barron and Holtzoff, Federal Practice and Procedure, Rules Edition, Volume 3, where Rule 56(c) is discussed at pages 194 through 196, it is said:

"With regard to damages, Rule 56(c) originally provided that summary judgment should be entered if it appeared that, 'except as to the amount of damages' there was no genuine issue as to any material fact and that the moving party

partial judgment and left the amount of damages and fees to be determined in a separate proceeding. Such a procedure would produce the very mischief which the rule was designed to prevent—the piece-meal trial and appeal of cases. The partial summary judgment was not a final judgment as to any claim or any party and therefore was not appealable under CR 54(b)."

---

1. The adding of the language, "there is no just reason for delay" to the judgment does not make a final, appealable order out of a summary judgment, as is contended for by appellees-McGuires.

2. The same contention is made in a very recent case, namely, Bowing v. Board of Trustees of Green River Community College, 85 Wash.2d 300, 534 P.2d 1365 (1975), where the plaintiff took the same identical position as do appellees-McGuires here. In denying the plaintiff's contention, the Supreme Court of Washington said:
 "It will be seen that a partial judgment is final only when there is a final judgment upon one or more claims. The plaintiff's claim in this case was not fully adjudicated until the amount of damages had been determined, including the attorney fees, which the court awarded as an element of damages. The plaintiff insists, however, that the defendant could have taken an appeal from the

3. Rule 72(a), W.R.C.P., provides: "A final order is: (1) an order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment; (2) an order affecting a substantial right, made in a special proceeding, or upon a summary application in an action, after judgment; (3) an order including a conditional order, granting a new trial on the grounds stated in Rule 59(a)(4) and (5)—if an appeal is taken from such an order, the judgment shall remain final and in effect for the purposes of appeal by another party."

was entitled to a judgment as a matter of law. This provision caused some doubt as to whether a summary judgment might be rendered if there was a question as to the amount of damages. The subdivision was amended by omitting the phrase quoted above and adding the provision that a summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. . . . *Such an interlocutory order is not a final decision and is not appealable."* (Citing Borges v. Art Steel Co., C.A.2d 1957, 243 F.2d 350; Russell v. Barnes Foundation, C.C.A.3d, 1943, 136 F.2d 654; also citing Maybury v. City of Seattle, 1959, 53 Wash.2d 716, 336 P.2d 878; and Clear v. Marvin, 1961, 83 Idaho 399, 363 P.2d 355, 356) [Emphasis ours]

In Clear v. Marvin, 83 Idaho 399, 363 P.2d 355, 356 (1961), an action for wrongful death was involved wherein it was alleged that the defendant's negligence was the cause of the death of the plaintiff's minor daughter. Upon the plaintiff's motion for summary judgment the court entered a judgment determining the defendant's liability and further that the only issue remaining was the amount of damages, from which summary judgment the defendant appealed. The court, holding that the judgment appealed was interlocutory in character, said:

"The judgment here entered has the character of finality, but only as to a portion of the issues raised by the pleadings. It is a judgment declared by the rule to be interlocutory in character.

"Negligence and contributory negligence are issues of fact presented by the pleadings. The correctness of the court's ruling as to such issues may be seriously questioned. Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657. This court may determine such question upon an appeal from the final judgment, but not upon this attempted appeal from the interlocutory judgment." (Citing

cases and 3 Barron & Holtzoff, §§ 1231, 1241)

In Russell v. Barnes Foundation, C.C.A. 3d, 136 F.2d 654 (1943), a summary judgment for plaintiff against the defendant was entered with an order that the case proceed for trial for determination of damages, and even though the order determined the defendant's liability to the plaintiff the court held that such an order will not become a "final decision" or "final adjudication" of the controversy between them until the damages to which the plaintiff is entitled have been assessed.

In the case of Borges v. Art Steel Co., C.A.2d, 243 F.2d 350 (1959), eleven employees of the defendant sued to recover increased wages and a motion for summary judgment was issued on the legal issue, whereupon the court held that they were entitled to the increase but failed to fix a dollar amount. The summary judgment order was appealed from, the appellate court dismissing the appeal on the ground that it was premature before the amount of the recovery is fixed and is not, therefore, an appealable order.

For all the reasons stated and under the authorities cited we hold that the summary judgment made and entered here March 29, 1971, was not a final order under Rule 72(a) of the Wyoming Rules of Civil Procedure from which an appeal could have been taken to this court. It follows that the appeal taken from the final judgment entered herein on the 2nd day of October, 1971, was timely and did present for consideration here the points set out in the appellant's brief, including the question of whether or not there was error on the part of the trial court in sustaining the plaintiffs' motion for summary judgment and holding the appellant liable as a matter of law.

## MOTION FOR SUMMARY JUDGMENT
### *Introduction*

Appellees ask us to interpret the following statute as being one of absolute liabili-

ty [4]—liability without fault—liability for which there is no excuse. The statute is:

"§ 41–46 (W.S.1957). Liability of owners.—The owners of reservoirs shall be liable for all damage arising from leakage or overflow of the waters therefrom, or by floods caused by breaking of the embankments of such reservoir."

Appellees urge upon this statute an interpretation which makes the owner of a reservoir an insurer and liable for every possible contingency known to the mind of man where his water escapes and damage results. This philosophy makes room for no exceptions—not even "acts of God" according to the position taken in the argument before this court.

In that argument, an analogy having to do with keeping a tiger in the back yard was used to illustrate the unyielding of the appellees' stance with respect to the statute's imposition of absolute liability. This analogy goes like this: It is all right to keep a tiger on the premises, but absolute liability attaches if he escapes to do damage.[5] The comparison is apt only if we will agree that for a landowner in the semi-arid west to use his premises to build an irrigation dam so that the reservoir may water his crops is like keeping a tiger on his property.

Appellees suggest that the statute, § 41–46, W.S.1957, supra, is but a legislative enactment of the common-law principle.[6] The "common-law principle" referred to was originally announced in the English case, Fletcher v. Rylands, 3 H. & C. 774, 159 Eng.Rep. 737 (Ex.1865), reversed in Fletcher v. Rylands, L.R. 1 Ex. 265 (1866),

affirmed in Rylands v. Fletcher, LR 3 HL 330 (1868). Those were years during which this country was involved in a civil war and its aftermath. The West was young and not yet won (or lost, depending upon one's point of view). The rule of this famous case undertook to define the liability of an owner for conditions and activities on and about his premises which are harmless while they remain there but will do damage if they escape.

We might agree that the Wyoming statute is an "affirmation of the common-law principle," but the problem is, assuming this to be true, where does this lead us? Does that make the Wheatland Irrigation District absolutely liable for damage claimed to have been done by a saboteur who blew up its dam near Wheatland, Wyoming in 1969 and permitted its water to escape and do damage to the neighbors?

*Rylands v. Fletcher examined:*

What was the rule of Rylands v. Fletcher? Was it really one of absolute liability—that is, liability which, *in all cases,* flows automatically upon the triggering of the mechanism which permits the substance to escape and cause damage? In other words, was it intended as a rule which makes a liability insurer out of the defendant?

The facts under which the defendants in Rylands were held liable are:

"The defendants constructed a reservoir on land separated from the plaintiff's colliery by intervening land. Mines under the site of the reservoir and under part of the intervening land had been formerly worked, and the plaintiff had,

---

4. We use the term "absolute liability" in this opinion as being synonymous with the word "insurer" which speaks of liability without fault. When "strict liability" is used or referred to, it is intended to import a liability brought about through negligence.

5. "I am by no means sure that if a man kept a tiger, and lightening broke his chain, and he got loose and did mischief, that the man who kept him would not be liable." Bramwell,

B., in Nichols v. Marsland, L.R. 10 Ex. 255, 260 (1875).

6. At page 12 of appellees-Prossers' brief, counsel, having referred to Canon City & C. C. R. Co. v. Oxtoby, 45 Colo. 214, 100 P. 1127 (1909), and Sylvester v. Jerome, 19 Colo. 128, 34 P. 760 (1893), it is observed that the Supreme Court of Colorado in these cases held that the statute of Colorado (which is exactly like the Wyoming statute), was:
 "an affirmation of a common-law principle."

by workings lawfully made in his own colliery and in the intervening land, opened an underground communication between his own colliery and the old workings under the reservoir. It was not known to the defendants, nor to any person employed by them in the construction of the reservoir, that such communication existed, or that there were any old workings under the site of the reservoir, and the defendants were not personally guilty of any negligence; but, in fact, the reservoir was constructed over five old shafts leading down to the workings. When the reservoir was filled, the water burst down these shafts and flowed by the underground communication into the plaintiff's mines." (From 62 Am Jur 2d, Premises Liability, § 8, Note 9, p. 234)

Lord Blackburn of the Court of Exchequer, one of the authors of the opinion in *Rylands*, stated the rule of the case to be:

"The person who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape."[7] The Lord further said:

"The defendant can excuse himself by *showing that the escape was owing to the plaintiff's default or perhaps that the escape was the consequence of vis major or the act of God.*" [Emphasis ours] (From 57 Am.L.Rev., p. 554, supra note 7)

Thus it can be seen that even as the rule was born, it came into the world of torts with the author's recognition that it was not conceived to be one of absolute liability —strict, yes—absolute, no.

To that decision which held the defendants liable under the facts in Rylands v. Fletcher, there has, over the years, been grafted various exceptions, exclusions, rejections and contractions as the rule has sought applicability and acceptance in various factual circumstances and conditions.

After Rylands v. Fletcher in 1868, the exceptions that Blackburn noted (acts of the plaintiff, *"vis major"* and acts of God) were ground into the case law as other exceptions were added. In Nichols v. Marsland, L.R. 10 Ex. 255, 2 Ex.Div. 1 (1875–1876), acts of God were recognized as an exception to the rule, as were acts of:

"the Queen's enemies."

In that case [8] Mellish, L. J. said:

"The accumulation of water in a reservoir is not in itself wrongful; but the making it and suffering it to escape, if damage ensue, constitute a wrong. But the present case is distinguished from that of Rylands v. Fletcher in this, . . . . It is the supervening *vis major* of the water caused by the flood, which, superadded to the water in the reservoir (which of itself would have been innocuous), causes the disaster. A defendant cannot, in our opinion, be properly said to have caused or allowed the water to escape, if the act of God or the Queen's enemies was the real cause of its escaping without any fault on the part of the defendant."

In his work, "Salmond on Torts", 5th Ed., page 200, the author says:

"The rule known as that in Rylands v. Fletcher is one of the most important cases of absolute liability recognized by our law—one of the chief instances in which a man acts at his peril and is responsible for accidental harm, independent of the existence of either wrongful intent or negligence."

---

7. Per Blackburn, J., in Fletcher v. Rylands (1866), L.R. 1 Ex. 265 at p. 279; affirmed in the House of Lords (1868) L.R. # H.L. 330. (From "The Rule in Rylands vs. Fletcher and its Limitations," by Vincent C. Mc-

Donald, American Law Review, Vol. 57, p. 549)

8. 2 Ex. D 1 at p. 5. (From 57 Am.L.Rev., p. 555)

This comment by Salmond assigns absolute liability to the rule of Rylands v. Fletcher and we would agree that this is true where *Rylands* is in fact usable, but it will be noticed that, because of its harshness, it is not universally applied to facts where the occupier of land keeps something on his premises which, when it escapes, does damage to others. Therefore, the real question for decision is—when does the absolute liability concept of *Rylands* become applicable and when, because of its unyielding severity, must we look for and apply exceptions to it?

Vincent C. McDonald said in his article entitled "The Rule in Rylands vs. Fletcher and its Limitations," 1 Canadian Bar Review 140–147, 57 American Law Review, 549, 551:

> "Historically the Rule above stated (Rylands v. Fletcher) originated in the common law rule which imposed an absolute liability for damages done by trespassing animals and which had been applied in various classes of cases. But it is now generally referred to as the Rule in Rylands v. Fletcher, that being the first case in which the whole duty of occupiers of land with respect to the escape of dangerous things was exhaustively considered and precisely formulated." [Parenthetical matter ours]

In the above cited article, the author, speaking to the heavy burden that the rule places upon the occupier, says, at pages 551–552, 57 American Law Review, supra:

> "The duty thus imposed on occupiers is a very onerous one—it is a positive duty or strict responsibility resting on every occupier of premises to prevent at all hazards damage being done to his neighbours from the escape of deleterious or potentially dangerous things brought or collected by him upon his premises. The occupier is held practically to insure his neighbours from such damage, and therefore the absence of negligence on his part is no answer to the damage, nor are the precautions actually taken material to his liability. (Citations) *Such a*

> *burdensome duty, if interpreted literally and pushed to its logical limits, might become an intolerable incident to ownership of land, and so, as will be noted later, the courts have confined the rule strictly to its terms and have favoured the making of limitations thereto.* (Citation)" [Italics ours]

Additional indication that the rule has not evolved, in all cases, as one of absolute liability is noted in the McDonald article, supra, when the author says that an analysis of the rule will show:

> "that the occupier is not under an absolute liability for the escape of things which he did not himself bring or accumulate on his land, . . . . or for using his land in the ordinary and natural way."

The author observes that the rule of Rylands v. Fletcher does not apply:

> "1. Where the escape is due to 'vis major' or the act of God; or,

> "2. Where the escape is due to the *act of a stranger*; or,

> "3. To the escape of things which were naturally present on the premises and which were not artifically [sic] dealt with by the occupier; or,

> "4. To the escape of things brought or kept upon the premises not solely for the defendant's purposes but also for the benefit of the person injured; or,

> "5. Where the occupier is authorized by statute to bring or keep the dangerous thing on his premises." [Italics ours]

Pollock on Torts, 15th Ed. by P. A. Landon, in an article entitled "Duties of Insuring Safety" and in a part of the article entitled "Defenses to Rylands v. Fletcher Liability," says, at pages 380–381:

> "Again the principal rule (Rylands v. Fletcher) does not apply where the immediate cause of damage *is the act of a stranger* (Citing Box v. Jubb (1879) 4 Ex.D. 76, 48 L.J.Ex. 417; Wilson v. Newberry (1871) L.R. 7 Q.B. 31, 41 L.J.Q.B. 31; Rickards v. Lothian (1913) A.C. 263, 82 L.J.P.C. 42), nor where the

artificial work which is the source of danger is maintained for the common benefit of the plaintiff and the defendant, or, it seems, with the plaintiff's consent; nor does it make a man liable for the consequences of what a third person does on his land not for the owner's but for his own purposes; and there is some ground for also making an exception where the immediate cause of the harm, though in itself trivial, is of a kind outside reasonable expectation." (Citations for all statements) [Italics ours]

In his learned article entitled "Liability Without Fault," appearing in the Harvard Law Review, Volume 29, June 1916, No. 8, pages 803–804, Dean Ezra Ripley Thayer says:

" . . . . whatever the thought of the judges who decided the case, and wherever analogy might have been expected to lead, it was soon settled that Rylands v. Fletcher was to stand for no such doctrine of insurance against remote consequences. Not only was it limited to owners whose acts were for their individual purposes, excluding arrangements for the joint benefit of the plaintiff and the defendant, and excluding also undertakings of a public nature, but the defendant could set up an excuse that the escape was caused by the act of God, *or by the act of a third party,* or even, it would seem, by rats if their operations had been so skillfully conducted as to acquit the defendant of accessory negligence. This point indeed was not decided, for *Carstairs v. Taylor* (L.R. 6 Ex. 217 (1871)) went off on another ground; but it seems to be fairly involved in *Nichols v. Marsland* (L.R. 10. Ex. 255 (1875)) and *Box v. Jubb* (4 Ex. Div. 76 (1879)). For upon what can those cases rest except the abandonment of any idea of insurance against remote consequences? Elementary principles of the law of negligence would fix liability upon the defendant for an escape, whether caused by act of nature, or of a third person, if by due care he would

have foreseen and avoided it; and these decisions can mean in reason nothing less than this—that where an escape is caused by the direct interposition either of an act of man or a natural force, the defendant is excused in any case where he would not be liable on ordinary principles of negligence. In other words, in such a case *Rylands v. Fletcher* can be invoked only when it is unnecessary to invoke it." [Emphasis ours]

*Acts of Third Persons—An Exception to the Absolute Liability Rule of Rylands v. Fletcher*

In 62 Am.Jur.2d, Premises Liability, § 8, sub-heading "Escaping substances; doctrine of Rylands v. Fletcher," the text says, at page 234:

"However, even though the rule (Rylands v. Fletcher) if recognized and applied requires the imposition on the defendant of liability regardless of his fault, his liability under the doctrine is not absolute, and no liability exists where the escape of the dangerous substance from the defendant's premises is due to the plaintiff's own fault, or to vis major, the act of God, *or to acts of third parties which the defendant had no reason to anticipate.*" [Emphasis ours]

We have seen supra, where Pollock, as one of the defenses to Rylands v. Fletcher absolute liability, lists those situations where the immediate cause of damage is the act of a stranger.

McDonald, in his article on the rule of Rylands v. Fletcher, supra, at page 557, says:

"The severity of the duty imposed on occupiers by the Rule is further mitigated by a limitation which exempts them from the liability where the escape of the dangerous thing was caused by the act of a stranger or by agencies over which the occupier had no control."

In 169 ALR 517, under the general heading "Waters—Liability for Overflow," at § 10, which is sub-titled "Liability for act of third person," pages 544–545, cases are cit-

ed to the proposition that the owner of premises is not liable for the intentional torts of a third person resulting in damage to others. The encyclopedia cites as an example of the above proposition:

> "Cohen v. Brockton Sav. Bank, 320 Mass. 690, 71 N.E.2d 109 (1947), [where] a vandal broke into the basement of defendant's building and opened the drain off valve of a boiler and the water was thence pumped automatically into a moat and into premises occupied by plaintiff."

Also see the rule in Box v. Judd, L.R. 4 Exch.Div. 76 (England 1879), supra, where the court said:

> "There has been an overflow from the reservoir which caused damage to the plaintiff. The question is, what was the cause of this overflow? Was it anything for which the defendants are responsible—did it proceed from their act or default, or from that of a stranger over whom they had no control? The case is abundantly clear on this, proving beyond a doubt that the defendant had no control over the causes of the overflow, had no knowledge of the existence of the obstruction. Matters complained of took place through no default for breach of duty of the defendants, *but were caused by a stranger over whom and at a spot where they had no control. It seems to me to be immaterial whether this is called a vis major or the unlawful act of a stranger; . . . ."* [Italics ours]

The court in the old English case of Wilson v. Newberry, L.R. 7 Q.B. 31, where the escape of yew clippings was complained of, said:

> "It was quite consistent with the averments of this declaration that the cutting may have been done by a stranger without defendant's knowledge."

9. (1913) A.C. 263; Carstairs v. Taylor (1871), L.R. 6 Ex. 217; Nichols v. Marsland, L.R. 10 Ex. at p. 259; and see Imperial Tobacco Co. v. Hart, 51 N.S.R. 379;

In Rickards v. Lothian[9], the escape of water from a lavatory on the top floor of a building caused by the malicious act of an unknown person in turning on a tap, was held not to render the occupant liable for the damage done to the lower tenant.

It is also said in the 169 ALR annotation, supra, under paragraph 10, i. e., Liability for act of third person:

> "Nor will the owner of a dam be liable for damages caused by the escape of impounded water, according to the decision in Hudson v. Napanee River Imp. Co. (1913) 31 Ont L Rep 47, *where the escape is caused by the fact that the dam was destroyed by the malicious act of some unknown person.*" [Italics ours]

According to the above authorities it can be seen that the text writers and the courts have regarded, not only acts of God and the Queen's enemies to be exceptions to the absolute liability concept of Rylands v. Fletcher, but also, falling within this class of exceptions, are the malicious torts of a third person.

*The "Use" Concept as a Factor in Determining the Liability of the Owner of the Premises—Natural v. Unnatural Use—*

In the age, locality and general circumstances out of which the rule of Rylands v. Fletcher was spawned (1868–England), a reservoir of water on an owner's land constituted a "use" which was "unnatural" and dangerous, therefore, the owner of the premises was held absolutely liable for the escape of the water where damage resulted.

Lord Blackburn, in the Exchequer Chamber, used language which Prosser[10] says has often erroneously been said to be the rule of Rylands v. Fletcher, to-wit:

> " 'We think that the true rule of law is that the person who for his own pur-

Stevens v. Woodward, 6 Q.B.D. 318 at p. 322.

10. William L. Prosser, Law of Torts, 4th Ed., p. 505.

poses brings on his land and collects and keeps there *anything likely to do mischief if it escapes, must keep it at his peril,* and if he does not do so is prima facie answerable for all the damage which is the natural consequence of its escape.' ", supra. [Emphasis ours]

Prosser observes that in the House of Lords this statement was limited and that Lord Carins said that the:

"principle applied only to a *'non-natural'* use of the defendant's land, as distinguished from 'any purpose for which it might in the ordinary course of the enjoyment of land be used.' " [Emphasis ours]

And then the author comments:

"The emphasis was thus shifted to the *abnormal and inappropriate character of the defendant's reservoir in coal mining country rather than the mere tendency of all water to escape."* [Italics ours]

Therefore, under the Lord Carins' interpretation of Rylands v. Fletcher, which has been utilized in both American and British jurisdictions, we have another whole, vast area where the premises' owner is not absolutely liable for the escape of potentially dangerous things from his land. If he was making a *"natural"* use of his property at the time of the escape with resulting damage, ordinary care becomes the standard by which he is judged.

Prosser, supra, says, at page 506 of his work aforesaid, that the rule of strict liability evolving from Rylands v. Fletcher has been confined in the American and British jurisdictions to:

"things or activities which are *'extraordinary,'* or 'exceptional,' or 'abnormal,' and *not to apply to the 'usual and normal.'* " [Italics ours]

In ascertaining what is "natural" or "non-natural" Prosser says, at page 506:

"In determining what is a 'non-natural use' the English courts have looked not only to the character of the thing or activity in question but also to the *place and manner in which it is maintained and its relationship to its surroundings."* (Citing cases) [Emphasis ours] [11]

It is also to be observed that the Restatement of Torts has further contracted the applicability of the area to which the absolute liability concept of Rylands v. Fletcher can be applied. Prosser says, at page 512, supra:

"The Restatement of Torts (§§ 519, 520) has accepted the principle of Rylands v. Fletcher, *but has* limited it to an *'ultrahazardous activity'* of the defendant, defined as one which 'necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care,' and *'is not a matter of common usage.'* This goes beyond the English rule in ignoring the relation of the activity to its surroundings, and falls short of it in the insistence on extreme danger and the impossibility of eliminating it with all possible care. The shift of emphasis is not at all reflected in the American cases, which have laid quite as much stress as the English ones upon the place where the thing is done. . . ." [Emphasis ours]

In inquiring into the application of the concept announced by the Restatement of Torts (§§ 519 and 520), attention is called to the case of Reter v. Talent Irrigation District, 258 Or. 140, 482 P.2d 170 (1971), where seepage from an irrigation canal was involved, with no applicable statute

---

11. In Wiel's work entitled "Water Rights in the Western States," Volume 1, Third Edition, § 741, p. 798, under the sub-heading "Origin of the Term 'Natural Uses.',", the author says: "The term 'natural uses' is probably based on the idea running through other branches of the common law, that there is such a thing as an 'ordinary' or 'natural' or elemental use of land; a use, so to speak, for which nature intended it, in contrast with other uses to which land is put. If, in using the land in the natural or ordinary way, damage follows to a neighbor, it is not wrongful at law; it is *damnum absque injuria.* The damage lies where nature makes it fall."

governing, the rule of Rylands v. Fletcher was insisted upon by the plaintiff.

The Court said:

"If this theory were accepted, the defendant would be liable for damages simply because it brought water upon its own land, even if it had no reason to believe water was escaping onto adjoining property. Liability under Rylands v. Fletcher is predicated on the principle that persons should be strictly liable for damages caused by activities of an *unusual and especially hazardous nature*. Recently in McLane v. Northwest Natural Gas, [255 Or. 324,] 467 P.2d 635 (1970) we set forth the limits of the *Rylands* rule as it applies in this state: '. . . We have come to the conclusion that when an activity is extraordinary, exceptional, or unusual, considering the locality in which it is carried on, when there is a risk of grave harm from such abnormality; and when the risk cannot be eliminated by the exercise of reasonable care, the activity should be classed as abnormally dangerous.'"

(And thus within the rule of absolute liability) [Emphasis ours]

The Court goes on to say:

"*The activity conducted by the defendant here—the irrigation of orchard land in a naturally dry area—can hardly be called 'exceptional or unusual, considering the locality in which it is carried on.' Moreover, the risk of serious harm created by the activity is minimal.*" [Italics ours]

Referring to the canals in question, the Court said:

"They (the canals) do not appear to create the risk of serious harm which courts have had in mind in imposing strict liability."

■ We observe, therefore, before going on, that a part of the evolution of the liability concept in this area has had to do with the *use* to which the owner has put his land. If he is doing the natural and ordinary thing required and expected in the locality he will be regarded as using the premises in a manner which will premit him to be judged by the rules of negligence instead of being held as a liability insurer against remote consequences.

### Wyoming and Rylands v. Fletcher

This Court has very carefully considered and rejected the absolute liability rule in Rylands v. Fletcher when applied to escaping water.

We said in Jacoby v. Town of City of Gillette, 62 Wyo. 487, 174 P.2d 505, 514, reh. den. 177 P.2d 204:

"We have seen also that the rule in Rylands v. Fletcher, supra, . . . cannot be followed in view of the evidence herein and the weight of American authority on the point."

In *Jacoby* the facts were these—The Chicago, Burlington & Quincy Railroad Company constructed a ditch for diversion purposes which was adequate, excepting when ice jams occurred. On the day when the plaintiff's property was damaged, a chinook wind caused an unusually heavy thaw of ten or twelve inches of snow which had fallen that day and a great flood of water came down the canal in a very few hours; nothing like it had been known before; and it was the only time an overflow had occurred except through ice jams.

The charges were, among others, that the city failed to keep and maintain the ditch so that it would:

"carry all said water safely in said ditch without overflowing or escaping therefrom." (Absolute liability allegation)

In discussing the history of *Rylands* we took note of the act of God exception expressed by Lord Blackburn, supra—observed that the exception was carried through the early English cases, citing Nichols v. Marsland, L.R. 10 Ex., supra. We cited with approval the afore-discussed Canadian Law Review article, "The Rule in Rylands vs. Fletcher and its Limitations,"

by Vincent C. McDonald, supra, for the following proposition:

"'The "act of God" which excludes the operation of the Rule (Rylands v. Fletcher) in question means *any extraordinary occurrence or act which could not reasonably be anticipated or prevented by reasonable care,* and it may be one which it is either physically or practically impossible to guard against. "To come within the Rule of vis major it is not necessary that the act should be unique, that it should happen for the first time; it is enough that it is extraordinary and such as could not reasonably have been anticipated."'" (Citing cases) [Parenthetical matter ours]

In the *Jacoby* case we quoted Wiel's Water Rights in the Western States, 2d Ed., pp. 256–257, § 163, where the author said:

"'The use by means of ditches, flumes and similar apparatus is, of course, the most usual, and using the water in this way does not, by any means, make the appropriator an insurer of others against damage from breaking, overflow, seepage, or other escape of the water. The famous English case of Fletcher v. Rylands declared that a man builds a reservoir, or other works to hold water, at his peril. *But such is not the law of the West. The ditch owner is not liable merely because the break or escape occurred, but only if it occurred through his negligence.* Negligence must be shown. It is not even a case of res ipsa loquitur and negligence is not presumed from the mere fact that a break or escape occurred. The ordinary rule of

negligence, that there must be a failure to use the care which an ordinary prudent man would have taken under the circumstances, applies.'" [Italics ours]

In Howell v. Big Horn Basin Colonization Co., 14 Wyo. 14, 36–37, 81 P. 785, 790, 1 L.R.A.,N.S. 597, Chief Justice Potter established the position of this Court on the subject when he said, speaking for the Court:

*"The construction of ditches is one of the customary and recognized methods of appropriating water, and conveying the same for use in irrigation and for other necessary purposes. It is the method more generally, and, indeed, almost universally employed. While those engaged in such an undertaking, attended with possible risks to others, should be answerable for the conduct thereof with diligence proportioned to the apparent risk, there is no substantial reason, we think, for holding them accountable as insurers, nor for injuries not attributable to some fault or negligence on their part."* [Italics ours]

We have refused to invoke "strict"[12] liability where an irrigation ditch leaks causing damage. Redland v. Tharp, Wyo., 498 P.2d 1240, 1242 (1972).[13]

We have adopted the standard of reasonable care rather than imposing absolute liability in Taylor Ditch Company, Inc. v. Carey, Wyo., 520 P.2d 218, 222–223.[14]

Having noted and accepted, in Jacoby v. Town of City of Gillette, supra, the Lord Blackburn exceptions of vis major, acts of the plaintiff and acts of God in Rylands v. Fletcher, we here become concerned with whether we should add yet another excep-

12. "Absolute" within the context of this opinion.

13. "Plaintiffs further urged that we overrule our previous pronouncements and adopt a rule of strict liability as to the construction and maintenance of an irrigation or drain ditch. We are not persuaded that we should change the rule, i. e., that one who maintains a ditch for conveying water must answer for his negligent acts but there is no substantial reason for holding him ac-

countable as an insurer, as reaffirmed in Jacoby v. Town of City of Gillette, 62 Wyo. 487, 174 P.2d 505, 512, 177 P.2d 204."

14. "'The well-established rule is that the owner of an irrigating ditch is bound to exercise reasonable care and skill to prevent injury to other persons from such ditch, and he will be liable for all damages occurring to others as a result of his negligence or unskillfulness in constructing, maintaining, or operating the ditch.'"

tion in Wyoming, namely, the malicious acts of third persons.

Writers and courts now seem to be in almost unanimous agreement that the malice of a third party, over which the defendant has no control and could not anticipate, should fall within the class of exceptions noted above. We agree and so hold.

We have seen that the Restatement of Torts, supra, has developed a concept which excuses an owner from the absolute liability of *Rylands* if his land is being put to a common or ordinary use which is not also an extrahazardous activity.

We said in *Howell*, supra, that the construction of ditches is one of the "customary" and "recognized methods of appropriating water" and "conveying" the same "for use" in irrigation—it is "the method more generally, and, indeed, almost universally employed . . . ." The same is true of reservoirs with respect to storage of water for irrigation purposes in this State.

 Therefore, we reiterate that the absolute liability rule of Rylands v. Fletcher does not apply in Wyoming and acts of God, public enemies and third persons are exceptions thereto. The owner of premises is charged with a duty of reasonable care in constructing, maintaining and operating his irrigation works and facilities. Still unresolved is the problem of whether the statute—§ 41–46, W.S.1957—changes the ordinary-care standards so as to impose absolute liability upon reservoir owners whose water escapes to do the plaintiff damage.

*Effect of the Statute—§ 41–46, W.S.1957*

 We have exhaustively inquired into the history of the common-law rule pertaining to premises-owner's liability for keeping substance upon his land which it if escapes, could do damage to his neighbor. We have done this because we agree with appellees that the statute in question is merely an affirmation of the common-law rule announced by Rylands v. Fletcher, supra. A clue to interpretation is to be found in a historical analysis of the *Ry-*

*lands* rule beginning with its inception, its original interpretation by the Justices of the Exchequer Chamber and House of Lords, keeping in mind the then-existing conditions out of which the rule evolved and making room for its subsequent changes, exceptions, contractions and applicability under past and present circumstances. In addition, we have inquired into the history of the problem through its evolution in this State.

It is to be noted that the original Rylands v. Fletcher acts of God and public enemy exceptions were recognized in the Colorado cases cited by appellees and relied upon herein, which cases interpreted a statute identical to our § 41–46, W.S.1957. See Larimer County Ditch Co. v. Zimmerman, 4 Colo.App. 78, 34 P. 1111 (1893); Beaver Water & Irrigation Co. v. Emerson, 75 Colo. 513, 227 P. 547 (1924); and Ryan Gulch Reservoir Co. v. Swartz, 77 Colo. 60, 234 P. 1059, reh. den. (1925).

In considering the Colorado statute, the Supreme Court of that state, in Garnet Ditch & Reservoir Co. v. Sampson, 48 Colo. 285, 110 P. 79 (1910), on rehearing, in 48 Colo. 304, 110 P. 83, said:

> "We have held that the statute imposes an absolute liability, but we have not held that a reservoir owner may, or may not, under the law of the land and notwithstanding the statute, be excused from liability upon showing that the injury was caused by the *act of God or the public enemy.*" [Emphasis ours]

Later, in Ryan Gulch Reservoir Co. v. Swartz, 77 Colo. 60, 69, 234 P. 1059 (1925), the Supreme Court specifically held that a flood that was caused by an act of God or the public enemy was a good defense to an action brought against the owner for release of impounded and other waters when the embankment of the reservoir gave away.

The conclusion which must be drawn from these decisions is that liability under the statute is absolute only when the damage-causing forces are not acts of God, the

public enemy, or when courts, for other reasons, might decide to make other exceptions.

There is no unanimity where a statute is being interpreted against the historical background of Rylands v. Fletcher.

In Texas, as evidenced by the opinion in Anderson v. Highland Lake Co., Tex.Civ. App., 258 S.W. 218 (1924), the court held the defendant liable when his dam overflowed from an unusual but not unprecedented rainfall, irrespective of any question of negligence.

Webb v. Platte Valley Public Power & Irr. Dist., 146 Neb. 61, 18 N.W.2d 563 (1945), was concerned with an action for damages resulting from flooding of premises by a public power and irrigation district. The court recognized an act of God as relieving the owner from liability but declared that the rainstorm involved did not constitute an act of God, the damage having been caused from overflow in an unusual but not unprecedented rain.

In Barnum v. Handschiegel, 103 Neb. 594, 173 N.W. 593 (1919), the court held under the facts that a dam built across a creek channel from bank to bank to impound water did not come within that part of the statute providing for absolute liability of the owner of a storage reservoir for damages arising from the leakage or overflow of the water therefrom, etc., thus going to some length to avoid imposition of the absolute liability concept.

In Moulton v. Groveton Paper Company, 112 N.H. 50, 289 A.2d 68 (1972), 51 A.L. R.3d 957, the Supreme Court of that state was concerned with a violation of the statutory duty imposed on the defendant reservoir owners to repair, operate, maintain and control their dam so that it did not become a dam in "disrepair." The New Hampshire court held, in avoiding the imposition of strict liability, that the act simply imposed a standard of conduct, the violation of which would constitute legal fault in the same manner as did the causal violation of a common-law standard of due care.

Other cases can be found on both sides of the question. Some are capable of being distinguished but some are not. We must therefore attempt to apply the rule most appropriate to the conditions of our State, giving credence to what we have already said and held in other and prior cases.

In Wyoming we have other statutes pertaining to various uses of water in irrigation works and the duties of the owners thereof. We call attention to R.S.1899, § 901 (our § 41–217, W.S.1957); and also § 3069 of R.S.1889 (now our § 17–190, W.S. 1957, C.1965).

In *Howell,* supra, at page 34 of 14 Wyo., and page 789 of 81 P., we considered these statutes and took note of the Colorado act having to do with reservoir owner responsibility for escaping water. In commenting upon those provisions we said:

". . . . the Court of Appeals, without deciding *whether or not the statute is absolute,* and imposes responsibility regardless of conditions or circumstances, held it sufficiently *absolute* to relieve the plaintiff from alleging and proving negligence, and to cast upon defendant the burden of showing *exonerating facts,* . . . . (Citing Larimer County D. Co. v. Zimmerman, 4 Colo.App. 78, 34 Pac., 1111.)" [Emphasis ours]

This seems to represent the general rule of law.[15]

---

15. In 56 Am Jur, Water, § 168, p. 635, under the heading "Statutory Provisions," the text says:
 "In some jurisdictions statutes expressly make the owner of reservoirs liable for all damages caused by the breaking of embankments. This is done evidently with the intention of avoiding the danger that lurks in the inducement to secure water for the use of the person or for sale, at the most moderate expense in construction. *While it is doubtful whether such a statute makes the owner an insurer, certainly it relieves a person injured by the breaking*

It is to be observed that in *Howell* we did not interpret the Larimer County Ditch Company case as holding that the Colorado statute was one of absolute liability—Justice Potter, speaking for the court, observed that it was only:

"sufficiently absolute to relieve the plaintiff from alleging and proving negligence, *and to cast upon defendant the burden of showing exonerating facts.*" [Emphasis ours]

The "burden of showing exonerating facts" speaks of a proof obligation. A defendant could not show "exonerating facts" if he were precluded by a summary judgment. If we, in that opinion, had considered the Colorado statute to be one of absolute liability and therefore impervious to an attack by a showing of any kind, the court would not have taken account of the possibility that, upon a proper exonerating-fact showing, the defendant might be relieved of his burden of alleged liability.

In light of the rest of the *Howell* opinion, we regard the above quoted words of Justice Potter to point to an early indication that this court would hold § 41–46 not to be an absolute liability statute but one which, not only had exceptions, i. e., acts of God and the public enemy, but, could be responded to successfully with the proper kind of an exonerating-fact showing.

The rest of the case supports this precept in that the court interpreted §§ 41–217 and 17–190 as only requiring the exercise of ordinary care in the construction and maintenance of the embankments of a ditch and the degree of care that a prudent man would exercise in conveying water through an artificial channel.

We so held even though the language of the ditch statutes was forceful indeed, especially the language of § 17–190, which is:

"Every ditch company organized under the provisions of this article *shall* be re-

quired to keep the banks of their ditch or ditches in good condition so that the water *shall not be allowed to escape from the same,* to the injury of any mining claim, road, ditch or other property located and held prior to the location of such ditch . . . ." [Emphasis ours]

Section 17–190 speaks of what we have thought about from time to time as being "mandatory" language. The writer of the opinion concludes his thoughts on this subject in the *Howell* case:

"By these provisions the Legislature has shown a scrupulous desire to protect against unreasonable injury from water conveyed through ditches, *but they clearly fall short of imposing upon a ditch owner the burden of an insurer.*" [Emphasis ours]

Why should reservoir owners under § 41–46, W.S.1957, become liability insurers any more than ditch companies became insurers under § 17–190, W.S.1957, C.1965? The language of the latter statute was strong and positive—the ditch companies were required to keep their ditches so that the water *"shall not be allowed* to escape . . . ." In § 41–46, W.S.1957, the owner of a reservoir:

"shall be liable for all damage arising from leakage or overflow . . . ."

Under § 17–190, a strict interpretation would lead to an assessment of damage if the water escapes. Under § 41–46, a strict interpretation would lead to an assessment of damage once the leakage or overflow is shown. But, as we have seen, this court, in speaking about the meaning of § 17–190, said in *Howell,* supra, that the act was not intended to make an insurer out of ditch owners.

In light of the entire history of the common-law rule in Wyoming as interpreted by the opinions of this court, as well as the philosophy surrounding those opinions as they must be applied to the interpretation

*of a reservoir from the duty of alleging and proving negligence, AND CASTS UPON THE OWNER THE ONUS OF*

*EXONERATING HIMSELF."* [Emphasis ours]

of § 41–46, W.S.1957, it must be concluded as we do, that the statute was not intended to be and is not one which imposes absolute liability. Certainly it was never intended to be more restrictive than Rylands v. Fletcher, which itself carried exceptions and therefore was not a rule of liability insurance. Exceptions were made to Rylands v. Fletcher, just as exceptions were read into the statute as the Colorado Supreme Court interpreted an act identical to ours and finally held, in Ryan Gulch Reservoir Co. v. Swartz, supra (through recognition of the public enemy and the acts of God exceptions) that the statute in that state was not one which made a liability insurer out of the reservoir owner.

We further hold that one of the exceptions to the imposition of absolute liability, in addition to an act of God or the public enemy, is the malicious act of a third person such as a saboteur. We are reminded in this respect of what the court said in the English case of Box v. Jubb, supra:

> "Matters complained of took place through no default for breach of duty of the defendants, *but were caused by a stranger over whom and at a spot where they had no control. IT SEEMS TO ME TO BE IMMATERIAL WHETHER THIS IS CALLED VIS MAJOR OR THE UNLAWFUL ACT OF A STRANGER.*" [Emphasis ours]

The act of a saboteur, like an act of God or the public enemy, cannot be anticipated or guarded against by the owner. No amount of care that he is capable of exercising could protect either him or his neighbors from the damage released by forces emanating from any one of the three sources.

We are bolstered in our views herein by the "use" concept.

In *Jacoby*, supra, we cited Wiel, Water Rights, supra, to the effect that the transportation of water in this semi-arid part of the country is usually and ordinarily done with ditches and that the *Rylands* strict-liability rule was not the law of the West. We approve Wiel's philosophy that where damage is shown from an irrigation works in this part of the country, the burden of proof is upon the reservoir owner to show one of the exceptions to the absolute liability concept.

In this State, if the landowners were faced with the penalty of absolute liability instead of their right to rely upon reasonable care as a standard of conduct in responding to damage claims for escaping reservoir waters, the words of Vincent C. McDonald, which appear in his article entitled "The Rule of Rylands vs. Fletcher and its Limitations," supra, might indeed become prophetic, when he says:

> "Such a burdensome duty, if interpreted literally and pushed to its logical limits, might become an intolerable incident to ownership of land."

In holding, as we do, that the unlawful act of a third party, like an act of God or the act of a public enemy, may be shown as a defense to the charge that a reservoir owner's water has escaped to do damage to his neighbor's property, this case is therefore remanded for a new trial at which, in the regular course of the proceedings, the defendant will be permitted to make its defense on the issue of liability.

Reversed and remanded for new trial.