CITY OF ROCK SPRINGS, a Wyoming Municipal Corporation, Keith West, Mayor of the City of Rock Springs, and Russell Hawk, Chief of Police of the City of Rock Springs, Appellants (Respondents below),

v.

POLICE PROTECTION ASSOCIATION, an Unincorporated Association, Barney Ferrero, James Songster, Steven Majhanovich, in the official capacity as Rock Springs Police Department Civil Service Commission, Appellees (Petitioners below).

No. 5171.

Supreme Court of Wyoming.

April 30, 1980.

Jerry M. Murray, Rock Springs, for appellants.

Thomas T. Zollinger, Rock Springs, for appellees.

Before RAPER, C. J., and McCLIN-TOCK, THOMAS, ROSE and ROONEY, JJ.

ROSE, Justice.

The predicate for this appeal occurred March 8, 1979, when petitioners-appellees, the Police Protective Association of Rock Springs, Wyoming, an unincorporated association (hereafter P.P.A.), together with Barney Ferrero, James Songster and Steven Majhanovich, in their official capacity as the Rock Springs Police Department Civil Service Commission (hereafter the Commission), filed their petition praying for injunctive relief against the City of Rock Springs, Wyoming, a municipal corporation, Keith West, Mayor of the City of Rock Springs, and Russell Hawk, Chief of Police of the City of Rock Springs, respondents-appellants.

The petition took notice that the Mayor and City Council, at the City Council meeting on Tuesday, March 6, 1979, created a new job classification with the title of "Commander" within the Rock Springs Police Department. At the same meeting, Lawrence Levitt—a person not theretofore a member of the Rock Springs Police Department—was appointed to the newly created post. It is the contention of the Commission and the P.P.A. that this action violated the statutes of the State of Wyoming and various rules of the Commission.

The petitioners prayed for temporary injunctive relief whereby the respondents would be enjoined from giving effect to the purported appointment. Petitioners further prayed the court would, upon final hearing, permanently enjoin the respondents from creating the job classification in question without complying with Civil Service Rules and statutory provisions regarding such matters.

A temporary restraining order and an order granting permanent injunction were entered. An appeal has been taken from the order granting the permanent injunction.

FACTS

Mayor West took his oath of office January 1, 1979, and Police Chief Hawk was hired March 1, 1979. Their testimony is that unrest was present within the Police Department when they assumed the superintendence of the City and the Department of Police. The Mayor and Chief both felt a need to obtain upper-echelon police assistance and, with the consent of a majority of the city council, hired Mr. Levitt as "*Commander*."

On March 8, 1979, the Rock Springs Police Department Civil Service Commission was notified by Chief Hawk that a "temporary emergency" existed. The notification stated the emergency might be expected to last ninety days and, in response to the emergency, Larry Levitt had been appointed as a temporary emergency employee to the position of Commander in the Police Department.

The Chief, in his letter to the Commission, said that the reason for the "*temporary emergency*" employment is:

". . . Mr. Levitt possesses the qualifications and skills, I personally know are needed to be implemented immediately to carry out my plan to upgrade the department in general. . . ."

The Chief further observed:

". . . At this time, no other person possessing these qualifications is immediately available within the Rock Springs Police Department."

Evidence with respect to the term for which Levitt was appointed is in conflict. There is testimony he was to have his appointment on a "temporary emergency" basis. Other indications are that his tenure as Commander was not intended to be temporary and was to be coextensive with that of the Chief of Police, which was, itself, for an indefinite period.

ISSUE NO. 1.

The appellants identify the following as the first issue for this court's consideration:

"1. Whether the hiring of Larry Levitt as a temporary emergency Commander in the Rock Springs Police Department

was legal under Section 15-1-103(a)(xxxv)(A); Sections 15-5-106 & 112, W.S.1977; or, Rules 8-4 & 8-15, Rock Springs Civil Service Board (Revised 5-14-59) particularly in light of Wyoming Constitution Article 13, Section 1(d)? [sic]."

Consideration of the applicable statutes and rules leads to this summary:

According to § 15-5-102(b), W.S.1977 [1], the Rock Springs Police Department Civil Service Commission was authorized; and, by ordinance, the civil service system was adopted for the City of Rock Springs. By statute, § 15-5-120, W.S.1977 [2], the Commission is directed to adopt rules governing its proceedings and is obliged to enforce its rules. Under the same section, the Commission must adopt rules for the classification of employment, for promotion on the basis set out in the statute and prepare eligibility lists from which vacancies are to be filled. Section 15-5-107, W.S.1977 [3], also requires the Commission to classify various employments and to examine the qualifications of applicants. Such rules as will govern these and other relevant matters were adopted. Commission Rule 1-13 [4] provides for new job classification procedures and at the time of trial, the city ordinance indicates police classifications for

"City Marshall, Assistant City Marshall, Police Lieutenants, Police Sergeants, and Deputy City Marshall."

Section 15-5-106, W.S.1977 [5], provides no person may be employed or appointed in the

---

**1.** Section 15-5-102(b), W.S.1977, provides:

"*Commissions; establishment.*

"(b) The governing body may, in each incorporated municipality maintaining a paid police department and having a population of four thousand (4,000) or more according to the latest United States census establish a police department civil service commission."

**2.** Section 15-5-120, W.S.1977, provides:

"*Commission and committee to make rules and regulations; investigations of violations; witnesses.*

"The commission together with a committee of three (3), designated by the mayor from the governing body, shall adopt *and the commission shall enforce all rules and regulations necessary for the government of their proceedings. . . .*" (Emphasis supplied.) This section also requires the Commission to "adopt rules for the classification of employment, for the promotion on the basis of merit, experience and good record; and prepare eligibility lists from which vacancies are to be filled. . . ."

**3.** Section 15-5-107, W.S.1977, requires the Commission to

"classify the various employments in their respective departments into classes or schedules based upon the nature of the service to be rendered or duties to be performed. . .",

and to

"examine the qualifications of all applicants for eligible ratings in any class or schedule. . . ."

**4.** Rule 1-13 of the Rock Springs Civil Service Commission, revised as of May 14, 1959, provides:

"NEW CLASSIFICATIONS

"When any new classification is created, or when the duties and responsibilities of any existing office or place of employment are essentially changed, the appointing power shall submit in writing to the Commission a statement outlining in detail the duties and necessary qualifications for filling such office or place of employment. Upon receipt of such statement, the commission shall prepare a job classification for such classification, containing the requirements for applicants seeking a position within said classification and conduct examinations for applicants for the position."

**5.** Section 15-5-106, W.S.1977, provides:

"*Persons eligible for appointment in fire and police departments; appointment of chiefs.*

"(a) Except as otherwise provided, no person may be employed or appointed in the fire or police department except from the list of eligible persons certified by the respective commission to the governing body.

"(b) This section also applies to the office of the chief of the fire department. That position is to be considered as a promotion in the department to be gained through competitive examinations and merit, with the applicants to be taken from the next lower grade. However, if applicants from the next lower grade fail to pass the examinations as required, then the commission may receive applications from the next lower grade for examinations for the position.

"(c) This section does not apply to the appointment, tenure or office of the chief of police. However, if any member of the police department is appointed chief of police, he shall remain on the list of eligible persons certified and his classification remains the same at the end of his term as chief of police."

police department except from a list of eligible persons certified by the commission to the mayor and city council. Rule 8–1 of the Commission Rules [6] provides that the head of the police department will appoint "all subordinate officers" from the list furnished by the Commission. Section A1 [7] of the Commission Rules provides that assistant chiefs of the police department *"shall"* be appointed from the classified civil service.

Section 15–5–111, W.S.1977 [8], provides when a vacancy occurs in the officer grade (except the chief's position), it will be filled by a competent person from the next lowest grade and the commission will judge the competency of the person to fill the vacancy.

Section 15–5–109, W.S.1977, fn. 11, infra, provides where a position is to be filled, the commission will submit to the appointing body (upon its request) the names of three qualified persons, one of which shall be appointed. If there are no such qualified persons, the commission will certify additional names—but if there be no registered applicants,

"the commission may allow provisional employment, or it may authorize the appointive authority to select a suitable person for examination, and if qualified, he shall be certified for employment."

At the time of trial, the governing body of Rock Springs, under § 15–1–103(a)(xxxv)(A), W.S.1977 [9], possessed (in addition to the powers of appointment otherwise provided by law) the power to appoint such other officers and employees as necessary to the efficient operation of the city and to control, regulate pay and prescribe the duties of all appointees. The governing body may, under this statute, determine working conditions, provide and determine pay scales and provide supplemental benefits *"as long as those provisions are not in conflict with existing statutes. During an emergency or special conditions warranting, additional temporary appointments may be made."* (Emphasis supplied.)

Section 15–5–112, W.S.1977 [10], provides temporary employment shall follow the

6. Rule 8–1 of the Commission Rules provides:
"SUBORDINATES IN THE POLICE, HEALTH AND FIRE DEPARTMENTS TO BE APPOINTED FROM LIST
"The head of each of the police and fire departments of cities of the first and second class and the health officer in cities of the first class shall, by and with the advice and consent of the board of city council and mayor, and subject to the rules and regulations of the civil service commission, appoint from the classified civil service list furnished by the civil service commission all subordinate officers, employees, members or agents in his department, and in like manner fill all vacancies in the same."

7. Section A1 of the Commission Rules provides:
". . . The head of each of said departments may, and assistant chiefs of the police department shall, be appointed from the classified civil service. . . ."

8. Section 15–5–111, W.S.1977, provides:
"*Filling vacancy in grade of officers.*
"When any vacancy occurs in the grade of officers, except the chief of a police department, it shall be filled by a competent man from the next lowest grade. The commission shall determine the competency of the person to fill the vacancy.

9. The appellants refer us to § 15–1–103(a)(xxxv)(A), W.S.1977, "Cities and Towns, General Powers," where it is provided:
"(a) All cities and towns have the following powers which may be exercised by their governing bodies:
*          *          *          *          *          *
"(xxxv)(A) To appoint, in addition to the appointed officers and employees provided by law, such others as are necessary for the efficient operation of the city or town, and to control, regulate, pay and prescribe duties and rules of all appointees. The governing body may determine working conditions, prescribe and determine pay scales and provide supplementary benefits, as long as those provisions are not in conflict with existing statutes. During an emergency or special conditions warranting, additional temporary appointments may be made;"

10. Section 15–5–112, W.S.1977, provides:
"*Temporary service; emergency employees; report to commission.*
"Employment for temporary service shall follow the same procedure as for permanent employees, *except in case of emergency.* No emergency employee may continue in service for more than ninety (90) days, and no reappointment or employment to the same position at the end of the period is allowed unless

same procedure as that for permanent employment *"except in case of emergency,"* and no emergency employee can continue in service for in excess of ninety days, and no reappointment of such emergency appointments will be allowed without certification of the emergency employee's name by the commission, as provided by § 15–5–109, W.S.1977.[11]

Commission Rule 8–4 [12] provides for appointment of temporary employees for no longer than one month in any calendar year; and Commission Rule 8–15 [13] provides that department heads may hire temporary employees (as contemplated by Rule 8–4) without making such appointment from the certified list. (See § 15–5–106, supra).

The appellants urge the liberal-construction rule as contemplated by Article 13, Section 1(d), Wyoming Constitution.[14]

From the above, the following conclusions may be reached:

(1) There was no classified position of "Commander" in the Rock Springs Police Department when Levitt was appointed.

the emergency employee's name is certified by the commission as provided in section 15.1–289 [§ 15–5–109]. The official making an emergency employment shall report it to the commission within three (3) days, giving the reason, and the probable period of emergency." [Emphasis supplied.]

**11.** Section 15–5–109, W.S.1977, provides:
*"Filling positions; provisional employment.*
"When a position is to be filled in either department, the governing body or chief of the department shall request the commission for the names of three (3) eligible persons. Upon request, the commission shall certify the names of the three (3) qualified applicants having the highest percentage of proficiency, one (1) of whom shall be employed. When all persons certified are unsuitable for the position, the commission shall certify additional names, but the reason for certification of the additional names shall be stated in the certificate. If there are no registered eligible applicants the commission may allow provisional employment, or it may authorize the appointive authority to select a suitable person for examination, and if qualified, he shall be certified for employment."

**12.** Rule 8–4 of the Rock Springs Civil Service Commission provides:

(2) Assuming, arguendo, that an emergency *did not* exist, the appointment violated Commission Rule 8–1, fn. 6, supra; Section A1 of the Commission Rules, fn. 7, supra; Commission Rule 1–13, fn. 4, supra; § 15–5–106, fn. 5, supra; § 15–5–111, fn. 8, supra; and § 15–5–109, fn. 11, supra.

■ (3) Section 15–1–103(a)(xxxv)(A), fn. 9, supra, was of no assistance to the respondents because its authority was nullified by its own terms since, in this situation, its provisions were "in conflict with existing statutes." Furthermore, this section is a general statute which is inconsistent with a special statute pertaining to the same subject and, therefore, the special statute must govern.

It has been held in *In re Edelman's Estate*, 68 Wyo. 30, 228 P.2d 408, 414–415 (1951), by quoting favorably from 59 C.J. 1000:

" 'General and special provisions in a statute should stand together, if possible but where general terms or expressions in one part of a statute are inconsistent with more specific or particular provi-

"TEMPORARY EMPLOYEES
"The head of each of said departments, by and with the advice and consent of the board of city council and mayor, may employ any person for temporary work only, without making such appointment from the certified list, but such appointment shall not be longer than one month in the same calendar year, and under no circumstances shall such temporary employee be appointed to a permanent position unless he shall have been duly certified by the civil service commission as in other cases."

**13.** Rule 8–15 of the Rock Springs Civil Service Commission provides:
"TEMPORARY APPOINTMENTS
"Department heads, by and with the advice and consent of the Mayor and City Council, may employ any person for temporary work only, without making such appointment from the certified list."

**14.** Article 13, Section 1(d), Wyoming Constitution, provides:
"The powers and authority granted to cities and towns, pursuant to this section, shall be liberally construed for the purpose of giving the largest measure of self-government to cities and towns."

·sions in another part the particular provisions must govern, unless the statute as a whole clearly shows the contrary intention and they must be given effect notwithstanding the general provision is broad enough to include the subject to which the particular provisions relate. The particular provision should be regarded as an exception to the general provision so that both may be given effect.' "

Also, in *Town of Worland v. Odell & Johnson*, 79 Wyo. 1, 329 P.2d 797, 807 (1958), the court stated:

". . . The creation of a specific mode of exercising power excludes all others . . . And where a special provision is made by statute, it prevails over the general. . . ."

(4) Unless an emergency existed, respondents could not appoint on a temporary basis without following regular hiring procedures because of the prohibitions of § 15–5–112, fn. 10, supra.

The only grounds upon which Levitt's appointment can be justified is a finding that he was lawfully appointed as a temporary employee because an emergency existed and that it is somehow unimportant that the position of Commander did not exist.

Whether or not an emergency existed so that a temporary appointment could be made was a question for the fact finder—the judge who tried the case without a jury. The court found the employment was not temporary and found no emergency to exist. We find there was sufficient evidence upon which the judge could come to that conclusion.

■ We will review such facts as will satisfy the appropriate appellate rules in this respect, one of which is that on appeal the reviewing court assumes that the evidence in favor of the successful party is true, leaves out of consideration entirely the evidence presented by the unsuccessful party that conflicts with the successful party's evidence and gives the evidence of the successful party every favorable inference that may reasonably and fairly be drawn

from it. *Madrid v. Norton*, Wyo., 596 P.2d 1108, 1117 (1979). In *Scherling v. Kilgore*, Wyo., 599 P.2d 1352, 1359 (1979), we noted—citing numerous Wyoming case authorities—with respect to sufficiency of the evidence that this court cannot substitute its judgment for that of the trial court and that judgments must be sustained unless clearly erroneous or contrary to the great weight of evidence.

*Temporary Employment*

■ It cannot be seriously urged that the appointment was temporary. Counsel asked the Chief these questions and received the following answers:

"Q. . . . Can you recall exactly what you told him his job would be and how long he would have his job?

"A. He would be second in command to me.

"Q. Second in command. For how long?

"A. I'd hope for the rest of my tenure here.

"Q. You assured him that as long as you had a job, he had a job?

"A. I had hoped that, yes."

In his memorandum opinion, the trial judge observed:

". . . Mr. Levitt's employment was not temporary. Chief Hawk testified that Mr. Levitt was not on temporary leave of absence from Douglas; that he did not expect him to stay only 30 days; and that he would hope there would be 'some legal means' of keeping Mr. Levitt as commander after 90 days. Mr. Levitt testified that he was assured that the 'temporary job' would be permanent . . .

". . . [I]t is obvious that the employment was not temporary, and even it it had been, compliance was not had with Section 15–5–109 [fn. 11 of this opinion] relating to provisional employment." (Bracketed matter supplied.)

We agree with the trial court. The evidence supports the court's finding that the appointment was not temporary.

*Emergency*

Section 15–5–112, fn. 10, supra, permits employment for temporary service, but requires that the same hiring procedure must be followed as for permanent employees, *"except in case of emergency."*

*Was there an emergency?*

The trial judge, in his able and helpful memorandum opinion, looked for a definition of emergency within the context of § 15–5–112, supra, and recited the following definitions and holdings, which we find acceptable:

" 'Emergency' is defined in Webster's Third International Dictionary as 'an unforeseen combination of circumstances or the resulting state that calls for immediate action,' and 'a pressing need.' 14 Words and Phrases 434–457 cites scores of cases defining 'emergency,' and when the word is applicable, among them being:

" 'An "emergency" is an unforeseen occurrence or combination of circumstances which calls for immediate action or remedy; a pressing necessity. Whether an "emergency" exists justifying an appointment by Governor to vacant office is reviewable by courts. *State ex rel. Parks v. Tucei,* 166 So. 370, 371, 175 Miss. 218.' Words and Phrases, 438.

" 'If a servant can himself do work rendered necessary in unforeseen contingency, there is no "emergency" authorizing employment of assistant, so as to render assistant a fellow servant. *Freemen v. Smit,* 75 P.2d 575, 577, 193 Wash. 346.' 14 Words and Phrases, 439.

" 'Where mayor and common council, within six weeks of resolution reducing police force without assigning reason, employed men to replace discharged policemen and it did not appear that "emergency" existed, dismissal was arbitrary, and hence discharged policemen were entitled to reinstatement . . . *Glass v. Board of Common Council of City of Frankfort,* 90 S.W.2d 700, 703, 262 Ky. 471.' 14 Words and Phrases 422.

" 'Where there had been a shortage of firemen from 1961 and the shortage had been increasing steadily from year to year and in order to make up for the shortage firemen had been working a considerable amount of overtime, fire fighters association's stated threat to boycott voluntary overtime on the part of firemen in 1967 did not permit the city to declare a state of "emergency" making it mandatory for firemen to work in excess of 60 hours per week. *New Orleans Fire Fighters Ass'n Local 632 AFL–CIO v. City of New Orleans,* La.App., 204 So.2d 690, 695.' 14 Words and Phrases Supplement 69."

The trial court then proceeded to analyze the evidence to determine whether or not there were sufficient facts of record to support the Mayor's and Chief's decision that an "emergency" existed when Levitt was appointed.

The evidence most favorable to the appellees includes the following: Mayor West took office January 1, 1979, but he did not appoint a chief until February, with effective date of March 1, 1979. In the interim, the police department continued to operate without incident under the guidance of a lieutenant in the department. As has been noted, Chief Hawk gave as his reason that an emergency existed the fact that Levitt's

"qualification and skills I personally know are needed to be implemented immediately to carry out my plans to upgrade the department in general."

Even though the Chief indicated that there were no such persons in the department, the record permits of the conclusion that the Chief's inquiry was of a cursory nature— one which did not permit him to knowingly decide that such personnel were not available within the department. A review of the record indicates to us that the Chief could not know whether his problems could or could not have been solved through the utilization of officer personnel from the department because he had not reviewed any of the files of the available policemen. In any event, the Chief's reason for hiring

Levitt does not suggest that an "emergency" existed under any definition of case law cited by the trial judge, and which we have approved, supra.

The judge examined exhibits in the form of a report concerning the needs of the Rock Springs Police Department furnished by the Wyoming Law Enforcement Academy and, not finding any recommendations therein contained having to do with emergency matters, responded to this report as follows:

". . . To the contrary, the report states that the 'City of Rock Springs has the nucleus for an efficient police department,' recommends certain areas of improvement, and adds that 'it is inevitable that *some years may pass* before improvements and exceptions will be fully realized,' and that 'In every sense the present report is a beginning toward *a long range plan* of maintaining a police service that is capable of meeting developing needs.' . . ."

The following dialogue took place between the judge and Chief Hawk when the Chief was on the witness stand:

"THE COURT: But before you declared this alleged emergency, you'd already agreed to hire Mr. Levitt; isn't that correct?

"THE WITNESS: Yes, sir.

"THE COURT: The emergency occurred in your mind after Mr. Levitt was already hired?

"THE WITNESS: Maybe I can explain by saying that I had been guided by Counsel in making that particular decision.

"THE COURT: I'm talking about this emergency. You determined there was an emergency after you had hired Mr. Levitt.

"THE WITNESS: After we had offered him employment, yes, sir."

Mayor West and the police chief both testified that the reason the emergency was declared was to make Larry Levitt's appointment legal. Without going further, we think that the judge could have found—as he did find—that an emergency did not exist and that

"the 'emergency' was apparently an after-the-fact discovery made only in an attempt to give some legal justification for not complying with the Civil Service rules and for the hiring of Mr. Levitt."

### Filling Vacancy in Officer Grade

While the above effectively disposes of the temporary-emergency issue, we should, perhaps, take cognizance of the other restrictions blocking the way of appellants who insist that the Mayor and Chief were within their rights in concluding that Levitt could be appointed as a temporary emergency measure without complying with the otherwise pertinent hiring directives of the Rules of the Commission and statutes.

Section 15-5-112, fn. 10, supra, upon which appellants rely, is inapplicable to the facts of this case when read with § 15-5-111, fn. 8, supra. Section 15-5-112 permits employment of *employees* for temporary service in the case of emergency without following the same procedure as for permanent employees. But the question is—does the statute apply to a "commander," or, to be more precise, does § 15-5-111, fn. 8, supra, permit employment of a "commander" as a temporary emergency employee under any circumstances? If a commander is an "officer" within the contemplation of § 15-5-111, supra, then Levitt could not have been temporarily appointed even if an emergency did exist because:

". . . [A]ny vacancy . . . in the grade of officers . . . shall be filled by a competent man from the next lowest grade. . . ." § 15-5-111, fn. 8, supra.

We think that the Chief's understanding of the job, as well as the duties contemplated for Levitt, fit the title of "officer" and that the term "commander" was employed instead of Assistant Chief or "Assistant City Marshall" in order to avoid the statute (§ 15-5-111, fn. 8, supra), as well as Rule 8-1, fn. 6, supra, and Section A1, fn. 7, supra, of the Rules.

The police chief testified that Levitt was to be

"second in command to me."

In an exhibit of record, Levitt's duties as Commander were described by the Chief as follows:

"EXAMPLES OF DUTIES: (Any one position may not include all of the duties listed nor do the listed examples include all duties which may be found in positions of this class.)

"Plans, coordinates, supervises and evaluates the operations of the police division assigned; establishes policies and procedures for the attainment of division goals.

"Coordinates the work of the division with others in the department; prepares and recommends division budget.

"Supervises and participates in major criminal investigations as required.

"Informs division of new and revised laws, court cases, rules and regulations affecting the operations of the Police Department.

"Meets with other departments, organizations, and the public to discuss and explain department activities.

"Supervises the training and instruction of personnel; serves as an instructor for in-house training sessions.

"Participates in Police Department planning and staff meetings.

"Reviews reports of lower level personnel and provides advice or assistance as necessary.

"Attends conferences and meetings to keep abreast of current trends in the field.

"Assumes the duties and responsibilities of the Chief of Police in the absence of the Police Chief as assigned.

"Identifies and solves police administrative and operational problems.

"Performs related work as required."

There was no classification for "commander" authorized by the Commission's Rules when Levitt was appointed. The new classification was created without complying with those rules (see fn. 6, supra). This, in and of itself, was sufficient to nullify the appointment. Assuming, arguendo, that the classification error could be forgiven (and we make this assumption only for purposes of making the following point), the fact still remains that a "commander" is an "officer" under § 15–5–111, fn. 8, supra, and, therefore, must be appointed and qualified as directed by that statute.

This conclusion is based upon the testimony of the Chief when he said that Levitt would be second in command only to him and the duties contained in Levitt's job description.

We might ask the question—who is an "officer" within the contemplation of § 15–5–111, fn. 8, supra, if the person who is "second in command to me" (the Chief) is not an "officer"? The asking of the question provides the answer.

We conclude, then, that there was more than sufficient evidence from which the court could find that the appointment of Mr. Levitt was not made as a temporary appointment and that an emergency did not exist. The appointment was, therefore, a nullity as being in violation of both the statutes and Rules of the Commission applicable to such matters, and the court acted properly in issuing the injunctions in question here.

ISSUE NO. 2:

■ The appellants ask reversal because there were insufficient grounds and evidence upon which the district court based its injunction orders. We find as a matter of law there were sufficient grounds alleged and sufficient facts introduced upon which these orders could issue. We need not consider this point except summarily because it was not briefed. *Satterfield v. Sunny Day Resources, Inc.*, Wyo., 581 P.2d 1386, 1390 (1978), cert. den., 441 U.S. 938, 99 S.Ct. 2153, 60 L.Ed.2d 1040.

ISSUE NO. 3:

■ The appellants argue that the City of Rock Springs did not validly reorganize a police department under the Civil Service statutes. The point was not raised below and we will, therefore, not consider it here. *Pritchard v. State, Div. of Voc. Rehab., Dept. of H.S.S.*, Wyo., 540 P.2d 523, 524 (1975).

ISSUE NO. 4:

Appellants complain that they were limited in the presentation of evidence with respect to whether the appointment in question was justified as a temporary emergency. We find no instance in the record where the judge in any manner limited testimony upon the appointment issue. Besides, there is no authority cited or even indicated which would support this contention. Under *Satterfield*, supra, we will not consider such a contention on appeal.

There being no other issues raised which have not been considered, the judgment of the trial court is affirmed.

Affirmed.