PINE CREEK CANAL NO. 1 a/k/a Lee Ditch, Appellant (Defendant),

and

Jack D. Richardson, Paul C. and Bette Hagenstein, and David Maytag, Appellants (Counterclaimants),

v.

Nicholas STADLER, Appellee (Plaintiff).

Nicholas STADLER, Appellant (Plaintiff),

v.

PINE CREEK CANAL NO. 1 a/k/a Lee Ditch, Appellee (Defendant),

and

Jack D. Richardson, Paul C. and Bette Hagenstein, and David Maytag, Appellees (Counterclaimants).

Nos. 83–194, 83–195.

Supreme Court of Wyoming.

July 12, 1984.

Don W. Riske and Warren R. Darrow of Riske & Edmonds, P.C., Cheyenne, Nelson Hayes of Richards, Brandt, Miller & Nelson, Salt Lake City, Utah, for Pine Creek Canal No. 1, Richardson, Hagenstein and Maytag.

William Twichell of Mason & Twichell, Pinedale, Thomas A. Fennell, Cheyenne, for Stadler.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROSE, Justice.

In case No. 83–194, an appeal is brought by Pine Creek Canal No. 1 arising from a negligence action originally filed by landowner Nicholas Stadler to recover damages which resulted from the failure of the Pine

Creek irrigation canal. Pine Creek Canal counterclaimed for damages to its irrigation ditch, alleging that Stadler negligently impaired its lateral support. Damages were stipulated and the case was tried to the court. The trial judge apportioned 45% of the negligence to Stadler and 55% to Pine Creek Canal No. 1, and awarded monetary damages to Stadler in the sum of $24,750.

## FACTS

Pine Creek Canal was originally built sometime prior to 1905 when there were no residences in the immediate area. However, the town of Pinedale grew such that the canal now crosses a slope along the eastern border of the present city limits. Stadler's residence and garage, together with personal property, were located below this slope, and he owns the slope itself as well as a flat area below. The slope is a glacial outwashed deposit of sand and gravel which is of granular consistency and is porous.

In June, 1980, the slope sloughed back toward the Pine Creek Canal, the canal failed, and mud, water and dirt flowed down the slope and destroyed Stadler's garage and equipment. The Pine Creek Canal irrigators lost the use of the water from the canal for the 1980 irrigation season and incurred the cost of repair of the canal.

In October, 1979, Stadler had excavated a portion of the slope so that he would have more space for his equipment and vehicles. He then built a wall along the excavation, which wall was approximately 120 feet in length and seven feet high for approximately 100 feet, after which it tapered down to two to three feet high. This construction was completed in the spring of 1980 but Stadler only partially backfilled the retaining wall and never did complete the backfill operation.

The evidence shows that for years there had been canal and embankment seepage in the area of the failure, of which the appel-

lant was aware. In the early part of June, 1980 and prior to the failure on June 21, the canal company worked on the canal by applying bentonite through a discing process which did not include the recommended compaction procedure. In the course of this operation, the canal company disced the bottom and sides of the ditch, which had the effect of increasing the soil's permeability as well as the amount of water seeping from the ditch. This operation created "a piping effect beneath the ditch and in the slope which leads up to the embankment of the ditch."[1]

According to the court, the canal company's primary negligence consisted of the following:

"(a) Failing to properly maintain the ditch, which flowed through pervious soil,

"(b) In failing to properly maintain the ditch by negligently and unskillfully attempting to bentonite the ditch in an improper manner;

"(c) By continuing to operate the ditch under the existing conditions and circumstances."

The court concluded that:

" * * * defendant's negligence to the extent of 55% was the direct and proximate cause of the erosion, washout and failure of the subject ditch, resulting in the damages suffered by the plaintiff."

The court found that appellee Stadler was secondarily negligent by reason of his digging into the toe of the slope and cutting away the canal's lateral support, which negligence was found to be a proximate cause of the damage, and the court assigned 45% of the total negligence to him.

*Questions for Decision*

"I. WHETHER THE TRIAL COURT ERRED IN FINDING THE APPELLANTS NEGLIGENT ABSENT ANY PROOF OF A STANDARD OF CARE BY WHICH THEIR CONDUCT COULD BE MEASURED AND ABSENT ANY

1. Trial judge's Findings of Fact.

PROOF THAT THEIR CONDUCT FELL BELOW ANY STANDARD OF CARE. "II. WHETHER THE TRIAL COURT ERRED IN FINDING THE APPELLANTS NEGLIGENT ABSENT ANY PROOF THAT THEIR CONDUCT CONSTITUTED A DIRECT OR PROXIMATE CAUSE OF THE SLOPE FAILURE.
"III. WHETHER THE EXPERT AND OPINION TESTIMONY PRESENTED BY APPELLEE WAS COMPETENT, BASED UPON ADEQUATE FOUNDATION AND SUSTAINED BY SUBSTANTIAL EVIDENCE.
"IV. WHETHER THE APPORTIONMENT OF NEGLIGENCE BY THE TRIAL COURT WAS PROPER."

### DISCUSSION

### Issue No. 1

"WHETHER THE TRIAL COURT ERRED IN FINDING THE APPELLANTS NEGLIGENT ABSENT ANY PROOF OF A STANDARD OF CARE BY WHICH THEIR CONDUCT COULD BE MEASURED AND ABSENT ANY PROOF THAT THEIR CONDUCT FELL BELOW ANY STANDARD OF CARE."

Section 41–5–101, W.S.1977, imposes the following duty on ditch owners:

"The owner or owners of any ditch for irrigation, or other purposes, shall carefully maintain the embankments thereof so that the water of such ditch may not flood or damage the premises of others."

The standard of care imposed by the trial judge is to be found in the judge's Conclusion of Law No. 3, which is:

"The rule of owners and operators of irrigating ditches is that the owner of an irrigating ditch is bound to exercise reasonable care and skill to prevent injury to other persons from such ditch, and he will be liable for all damages occurring to others as a result of his negligence or unskillfulness in constructing, maintaining or operating the ditch."

Pine Creek Canal urges that Stadler presented no "proof of the standard of

care" to which Wyoming ditch owners are held in the maintenance of their ditches. It is further asserted that there was no evidence introduced as to what is commonly done to maintain ditches and no evidence was introduced as to what the canal company should or could have done in that regard. Pine Creek Canal points out that unless the standard of care is within the common knowledge and experience of the trier of fact, an expert witness is needed to establish the standard. The canal company argues that this court is unable to know what knowledge the trial judge possessed on this subject since he failed to make any factual finding as to the applicable standard of care.

■ We are not exactly sure we understand what appellant Pine Creek Canal means when it argues that appellee has presented no "proof of a standard of care." We are involved here with a negligence case and it is the proponent's duty to prove the elements of the case—that is, duty, breach, proximately causing damage. *Danculovich v. Brown*, Wyo., 593 P.2d 187 (1979). The identification of the appropriate standard of care in a negligence case is a question of law—not of fact. *Vassos v. Roussalis*, Wyo., 625 P.2d 768, 772 (1981), citing *Maxted v. Pacific Car & Foundry Company*, Wyo., 527 P.2d 832 (1974). See *Buttrey Food Stores Division v. Coulson*, Wyo., 620 P.2d 549 (1980); *Matter of Estate of Mora*, Wyo., 611 P.2d 842 (1980); *Diamond Management Corporation v. Empire Gas Corporation*, Wyo., 594 P.2d 964 (1979).

Normally, the mythical "reasonable man" standard is employed, except in those cases where the subject at bar is highly technical or otherwise specialized in nature. In such a case, the standard of care is that which reasonable persons of comparable or like skills would reasonably employ in the same or similar circumstances. For example, when addressing the standard of care to which a physician is required to adhere, we said in *Vassos v. Roussalis*, supra, 625 P.2d at 772:

"* * * [A] physician or surgeon must exercise the skill, diligence and knowledge, and must apply the means and methods, which would reasonably be exercised and applied under similar circumstances by members of his profession in good standing and in the same line of practice. *Govin v. Hunter*, Wyo., 374 P.2d 421 (1962); *DeHerrera v. Memorial Hospital of Carbon County*, Wyo., 590 P.2d 1342 (1979); *Smith v. Beard*, 56 Wyo. 375, 110 P.2d 260 (1941); 70 C.J.S. Physicians and Surgeons § 41; 61 Am. Jur.2d Physicians, Surgeons and Other Healers § 205 (1981)."

█ Bringing this discussion to the case at bar, in 1905, we said in *Howell v. Big Horn Basin Colonization Co.*, 14 Wyo. 14, 81 P. 785, 790, 1 LNS 596 (1905), and in 1974 in *Taylor Ditch Company, Inc. v. Carey*, Wyo., 520 P.2d 218, 222–223 (1974):

"The well-settled rule is that *the owner of an irrigating ditch is bound to exercise reasonable care* and skill to prevent injury to other persons from such ditch, and he will be liable for all damages occurring to others as a result of his negligence or unskillfulness in constructing, maintaining, or operating the ditch." (Emphasis added.)

█ In these two cases, this court found no necessity to go to expert testimony in order to apply any standard other than the "reasonable man" standard of care as the duty and obligation of the ditch owner.

In the *Taylor Ditch Company* case, the trial judge found that damage resulted when the Taylor Ditch seeped onto the property of the plaintiff as a result of the ditch company's negligent maintenance and operation of the ditch. The trial judge found that there was an identifiable causal correlation between the presence of water in the ditch and the seepage on plaintiff's property. He went on to find that the failure of the ditch company to take proper precautions in constructing and maintaining the ditch through pervious soil constituted negligence. We held these findings to be consistent with *Howell*, where we sustained the trial court's holding to the

effect that seepage without negligence would not justify recovery but reversed the trial court's finding that the record in *Howell* did not contain evidence of negligence. We said:

"If the company saw fit to construct its ditch through soil naturally incapable of holding water, it should at least have made all proper and reasonable efforts to prevent seepage therefrom. Failing to do so, it was clearly negligent." 81 P. at 791.

In *Howell*, we cited Farnham on Waters & Water Rights, § 634, to the following effect:

"*The measure of the care which the ditch owner is bound to use is that which ordinarily prudent men exercise under like circumstances* when the risk is their own. And if he fails to exercise this degree of care, he is liable for the injuries which the water causes to the adjoining property in consequence of his negligence." (Emphasis added.) 81 P. at 790.

█ Given this background and this standard—long-since established—we again hold, as did the trial judge, that the standard of conduct for a ditch or canal owner is that of a reasonable, prudent ditch owner and, in the case at bar, the court did not need any expert testimony to determine whether this standard has been breached.

Issue No. 2

"WHETHER THE TRIAL COURT ERRED IN FINDING THE APPELLANTS NEGLIGENT ABSENT ANY PROOF THAT THEIR CONDUCT CONSTITUTED A DIRECT OR PROXIMATE CAUSE OF THE SLOPE FAILURE."

█ An appellate court inquiring of a sufficiency-of-the-evidence question, assumes evidence in favor of the successful party to be true, leaves out of consideration entirely the evidence of the unsuccessful party which is in conflict therewith, and gives to the evidence of the successful party every favorable inference which may

reasonably and fairly be drawn from it. *Krist v. Aetna Casualty & Surety*, Wyo., 667 P.2d 665 (1983), citing *Crown Cork and Seal Co., Inc. v. Admiral Beverage Corp.*, Wyo., 638 P.2d 1272 (1982); *City of Rock Springs v. Police Protection Association*, Wyo., 610 P.2d 975 (1980).

In this case, the court found that " * * * the primary cause of the subject canal failure and plaintiff's damages was due to the defendant's negligence in improperly maintaining the canal * * *."

While we do not intend to review all the evidence on the subject, we note the following for purposes of showing that the trial court had sufficient evidence upon which its finding securely rests.

At the outset, witnesses below the canal testified that when the water was in the canal seepage covered their properties, but, when the canal was empty, their properties were not affected. Thus, we know the canal leaked onto the properties below the canal. The appellants attempted to bentonite the ditch in the area of the appellee's property a few months before the canal gave way. The evidence is that the discing was done improperly. After the bentonite was introduced, the bottom and sides of the ditch were never compacted, and according to the expert witnesses who testified on the subject, the entire procedure was not carried out in an approved manner. The testimony was that without compaction, after discing and the introduction of bentonite, the soil would be even more permeable and the water would more easily seep through.

One of the experts put it this way: " * * * [W]ould tend to disturb the inside parameter of the ditch, destroying the sealing effect that the natural deposit of silt into the ditch bottom had had, and increased the permeability of the ditch bottom and allow more water to escape from the ditch into the hillside."

When asked to give his opinion as to the cause of the canal's failure, the expert said:

"The action of disking increased the permeability of the bottom of the ditch and increased the amount of water that was in the hillside or entering into the hillside.

\* \* \* \* \* \*

"The disking of the ditch bottom was a significant factor in the cause of the ditch failure."

The expert expressed his opinion as to the cause of the ditch failure when he said:

"I believe that waters seeping from the ditch went into the hillside, loaded the hillside and encountered some anomaly that concentrated the seepage forces and removed the material from the hillside backing up into the ditch and taking out the ditch." [2]

Given this and other evidence just as telling, the trial judge was able to structure the following Findings of Fact:

"15. That during the early part of June, 1980, prior to the failure of the subject ditch, which occurred on June 21, 1980, defendant worked on the canal installing bentonite in an effort to seal and line the ditch, but this effort failed.

"16. Defendant failed to consult with or retain the services of a professional engineer to determine the proper method of bentoniting this particular canal.

"17. That defendant, in installing the bentonite, disced the bottom and sides of the ditch located on plaintiff's property and property upstream from plaintiff's property.

"18. That the discing of the bottom and sides of the ditch increased the permeability of the ditch and increased the volume of water seeping from the ditch.

"19. The increased volume of water seeping from the ditch caused and created a piping effect beneath the ditch and in the slope which leads up to the embankment of the ditch, eventually leading to and causing the failure of the embankment and the canal on June 21, 1980."

The court then concluded:

"[t]hat the bentoniting procedure performed by defendant, which included the

2. According to this expert, the technical term for describing such an occurrence is "piping."

discing, was done in a negligent manner without regard for the obvious consequences thereof, and the defendant negligently maintained and operated the canal."

■ When discussing sufficiency of the evidence, we have said that the judgment will stand under a sufficiency-of-the-evidence attack if there is some or any evidence. In *Diamond Management Corporation v. Empire Gas Corporation,* supra, 594 P.2d 964, we held that the findings and judgment of the trial court are generally affirmed if there is any evidence to support them. In *Bentzen v. H.N. Ranch, Inc.,* 78 Wyo. 158, 320 P.2d 440, 68 A.L.R.2d 1213 (1958), we held that the findings and judgment of the trial court will stand if there is any evidence to support them.

It seems to this court that the trial court was possessed of more than sufficient evidence to reach the conclusion that the primary cause of the failure was the negligence of the appellant, which negligence included the manner in which it undertook the bentonite operation.

■ This being so, and applying our appellate obligation to accept the testimony favorable to the prevailing party as true and give it every favorable inference, we find that the evidence in this case was sufficient to support the trial court's holding that the primary cause of the canal's failure was the negligence of the appellant canal company.

### Issue No. 3

"WHETHER THE EXPERT AND OPINION TESTIMONY PRESENTED BY APPELLEE WAS COMPETENT, BASED UPON ADEQUATE FOUNDATION AND SUSTAINED BY SUBSTANTIAL EVIDENCE."

■ This issue was never raised before the trial court. The expert, based upon foundation inquiry, was asked for an opinion as to the cause of the canal's failure and gave it without objection or motion to strike. It is too late to raise the question now. We said in *ABC Builders, Inc. v. Phillips,* Wyo., 632 P.2d 925 (1981) that we will not consider on appeal questions not properly raised in the district court. See *City of Rock Springs v. Police Protection Association,* supra, 610 P.2d 975.

### Issue No. 4

"WHETHER THE APPORTIONMENT OF NEGLIGENCE BY THE TRIAL COURT WAS PROPER."

■ Appellants urge this court to find that the conduct of Stadler was willful and wanton and, therefore, the trial court improperly apportioned negligence between the parties. Once again, the appellants did not allege that the appellee was guilty of willful and wanton misconduct. The theory was never raised at any stage of the proceedings until it came to light for the first time in the appellant's brief in this court. We will not consider an issue raised for the first time here unless, of course, it speaks to a question of jurisdiction or addresses a fundamental right. See citations in Issue No. 3 above. In *Dame v. Mileski,* 80 Wyo. 156, 340 P.2d 205 (1959), we said that the defendant, having stated his position in his pleadings could not alter it on appeal. And see: *In re Appeal of Williams,* Wyo., 626 P.2d 564, cert. denied, *Williams v. Public Service Commission of Wyoming,* 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981); *Burnell v. Roush,* Wyo., 404 P.2d 836 (1965).

■ We pause to note, however, that the issue has no merit anyway because even though willful and wanton misconduct will not be weighed in the process of assessing liability for negligence-comparing purposes, *Danculovich v. Brown,* supra, the judge found Stadler guilty of simple negligence only. Appellants point to no law which holds that under the facts similar to those assigned to Stadler's negligence his conduct must be found to be willful and wanton as a matter of law.

We therefore conclude that in Case No. 83–194 the district court's judgment should be affirmed in all respects.

In Case No. 83–195, Stadler is the appellant and the issue here is identified as follows:

"DID THE COURT ERR IN REDUCING APPELLANT'S RECOVERY AS

AGAINST APPELLEE BY COMPARING THE NEGLIGENCE OF APPELLANT, AS FOUND BY THE COURT, WITH THAT OF THE APPELLEE ON A COMPARATIVE BASIS?"

 Essentially, the appellee's contention is this: He reads the trial judge's findings and opinion letter to say that the discing and failure to compact with increased porosity was the primary cause of the saturation of the embankment and the piping effect which, in turn, brought on the canal's collapse and resulting damage and that Stadler's activity only increased the damages but was not a causative factor. This being so, argues Stadler, it was error for the court to assign 45% of the negligence to him since his reduction of lateral support was a remote and not a proximate cause.

The trial court's Findings of Fact hold that Stadler performed excavation and dirt work on the toe or bottom of the slope which leads up to the bank of the canal, that

"[t]he slope did provide lateral support for the irrigation canal,"

and that plaintiff negligently built a retaining wall in the area of the excavation in that he did not backfill it properly and did not, at any time, seek or obtain the advice of an engineering expert with respect to his invasion of the integrity of the slope of the canal.

The appellant argues that the judge did not go on to hold that, although the canal gave way in the area of the excavation, there was a causal connection between the activity of Stadler and the resulting failure of the canal and supporting slope.

We cannot agree.

The trial court held that because of Stadler's negligence in attacking the integrity of the supporting slope, this

" * * * contributed to a larger slide than may have occurred had the bank not been excavated,"

and the court then concluded:

"The Court finds that *the failure of the ditch* and the damages resulting to the plaintiff *were the result of the negligence of the parties* in the following percentages on a comparative basis:

"Plaintiff—45%

"Defendant—55%." (Emphasis added.)

Any fair reading of the trial court's findings and holdings points to the conclusion that the judge found that the appellant's invasion of the supporting slope of the canal was one of the proximate causes of the damage. These conclusions are not questioned by Stadler on grounds that the excavation did not invade the slope nor is there any suggestion that the slope did not support the canal banks, and it is not argued that the excavation could not have weakened the bank of the canal. Stadler simply urges that the court found that Stadler's weakening of the bank increased the damages but was not one of the causes thereof. But this flies in the face of what the court actually said. The judge said that

" * * * *the failure* * * * and the damages * * * were the result of the negligence of the parties * * *." (Emphasis added.)

Affirmed.