**Clarence E. TILLERY and Alice Faye Tillery, Appellants (Plaintiffs),**

v.

**WEST SIDE CANAL, INC., Appellee (Defendant).**

**No. 85–110.**

Supreme Court of Wyoming.

June 2, 1986.

Jack Gage, Cheyenne, for appellants.

Robert M. Shively, Casper, for appellee.

Before THOMAS, C.J., and ROONEY*, BROWN, CARDINE and URBIGKIT, JJ.

* Retired November 30, 1985.

THOMAS, Chief Justice.

The question raised in this case is whether owners of an irrigation canal are subject to a standard of reasonable care under the circumstances or some higher standard in determining liability for damages resulting from the failure of a headgate on the canal. The district court held that the standard to be applied was that of negligence, that is, ordinary care under the circumstances. The district court then concluded that the owners of the canal were not negligent, and it entered a judgment in their favor in an action brought by landowners for damages which were caused to their lands when a headgate on the canal failed. The negligence standard is the applicable standard, and the judgment of the district court is affirmed.

The landowners have appealed from the judgment of the district court, and they submit this statement of the issue presented by the case:

"The issue presented for review in this case is simple and straightforward. The question is whether or not the trial court correctly interpreted W.S. 41-3-317 (1977) et seq., which was enacted as Chapter 120 of the Wyoming Session Laws of 1977."

The appellee, owner of the West Side Canal, states the issue in this way:

"Appellee believes that the issue presented for review by this case is whether or not the standard of conduct by which the liability of irrigation canal owners for property damage is determined is that of a reasonable and prudent man similarly situated, or is a standard more onerous, such as 'strict liability'."

Clarence and Faye Tillery are the owners of a ranch situated along the Little Snake River in the southern part of Carbon County. The West Side Canal, Inc. owns and operates the West Side Canal which runs across a portion of the Tillery property. The headgate for the West Side Canal by which water is diverted from the Little Snake River is located on the Tillery ranch. That headgate was constructed of concrete and reinforced with large boulders and earth fill. Between the Little Snake River and the headgate several stands of six-inch drill pipe were driven into the earth to protect the headgate.

The winter of 1983–1984 created a record snowpack in the mountains above the Tillery ranch. After a long and cold spring the weather warmed considerably in May of 1984, and this caused a rapid melting of the snowpack. Prior to that time the highest recorded stream-flow on the Little Snake River was 9,600 c.f.s. in 1920. This occurred prior to the construction of the headgate in 1939. On May 15, 1984, the Little Snake River was carrying 10,480 c.f.s., and in the morning hours of May 16, a reservoir situated above the West Side Canal headgate failed, adding to the flow in the already flooded river. The stream-flow following the failure of the reservoir was 14,000 c.f.s. The force of this water tore out the West Side Canal headgate, and the water coursing down the canal then flooded and damaged the Tillery ranch.

The Tillerys brought this action against West Side Canal, Inc. to recover for the damages to their property. They advanced theories of negligence and of strict liability. The trial court found that the complaint and the evidence were presented on a negligence theory, but the Tillerys' contention that strict liability should be the rule also was addressed. The trial court even permitted the Tillerys to amend their complaint after judgment. That amendment alleges that the standard of care applicable to West Side Canal, Inc., is that of strict liability, but the factors which are set forth to invoke strict liability are negligent design, construction, maintenance, and so forth. The trial court held that the standard to be applied to the action was that of due care.

In its findings the trial court concluded that the proximate cause of the headgate failure was the unforeseeable flood caused by the record snowpack, the unseasonable thawing and the early high water as augmented by the failure of the reservoir. The trial court determined that the magnitude of the flood could not have been fore-

seen reasonably and that West Side Canal, Inc., was not negligent because it had used reasonable care in the maintenance and operation of its ditch and headgate. The court then entered a judgment in favor of West Side Canal, Inc., with respect to the Tillerys' claim for damages. It is from that determination of the trial court that the Tillerys appeal.

In Wyoming negligence historically has been the standard for determining liability of ditch owners for damages. In 1905 this court held:

> "The well settled rule is that the owner of an irrigating ditch is bound to exercise reasonable care and skill to prevent injury to other persons from such ditch, and he will be liable for all damages occurring to others as a result of his negligence or unskillfulness in constructing, maintaining, or operating the ditch. * * *" *Howell v. Big Horn Colonization Company*, 14 Wyo. 14, 36–37, 81 P. 785, 790 (1905).

This rule has been followed consistently. *Pine Creek Canal No. 1 v. Stadler*, Wyo., 685 P.2d 13 (1984); *Taylor Ditch Company, Inc. v. Carey*, Wyo., 520 P.2d 218 (1974); *Redland v. Tharp*, Wyo., 498 P.2d 1240 (1972); *Jacoby v. Town of City of Gillette*, 62 Wyo. 487, 174 P.2d 505 (1946), reh. denied 62 Wyo. 487, 177 P.2d 204 (1947).

The rule of these cases was developed against a statutory treatment of the question which could have produced a different rule. Prior to 1977, § 17–190, W.S.1957, provided that "[e]very ditch company * * * shall be required to keep the banks of their ditch or ditches in good condition, so that the water shall not be allowed to escape from the same * * *." Section 41–217, W.S.1957, stated: "The owner or owners of any ditch for irrigation, or other purposes, shall carefully maintain the embankments thereof so that the water of such ditch may not flood or damage the premises of others." These statutes and the cases relating to the liability of ditch owners were relied upon in this court's decision in

*Wheatland Irrigation District v. McGuire*, Wyo., 537 P.2d 1128 (1975).

Because the failure of a reservoir was involved in *Wheatland Irrigation District v. McGuire*, supra, the specific statutory provision to be applied was § 41–46, W.S. 1957, which provided in pertinent part that reservoir owners "shall be liable for all damage arising from leakage or overflow." Comparing the strong language of this statutory provision pertaining to reservoir owners with similar strong language of the statutes relating to ditch owners, the court concluded that since the statutes pertaining to ditches did not make the ditch owner an insurer, the language of § 41–46, W.S.1957, did not make the reservoir owner an insurer. The court then held, in *Wheatland Irrigation District v. McGuire*, supra, that the statute pertaining to reservoir owners simply reaffirmed the doctrine of *Rylands v. Fletcher*, LR 3 HL 330 (1868), as it had evolved including its exceptions. Absolute liability would be imposed with respect to reservoir owners only if the occurrence was not within the penumbra of some applicable exception.

Following the decision in *Wheatland Irrigation District v. McGuire*, supra, the legislature amended a substantial portion of Title 41, Chapter 3, Article 3, W.S.1977, entitled "Reservoirs." These statutory revisions dealt primarily with the duties of state officers with respect to approving plans, inspecting, and making emergency repairs on reservoirs. Section 41–3–316, W.S.1977, provides, with respect to these duties, that the state shall not be liable for any dereliction. The section immediately following provides:

> "Nothing in this act shall be construed to relieve an owner or owners of any reservoir, dam or diversion system of any legal duties, obligations or liabilities incident to their ownership or operation of or any damages resulting from leakage or overflow of water or for floods resulting from the failure or rupture of the fill or structure for such works." § 41–3–317, W.S.1977

Earlier in § 41–3–307(a)(v), W.S.1977, diversion system is defined:

"(a) As used in this act unless the context otherwise requires:

\* \* \* \* \* \*

"(v) 'Diversion system' means any canal, ditch or pipeline with a carrying capacity in excess of fifty (50) cubic feet of water per second of time;"

The record discloses that the West Side Canal has a maximum capacity of 250 c.f.s. and is a diversion system within the statute. Relying upon these statutory provisions the Tillerys argue that the standard of care with respect to owners and operators of ditches has been adjusted by the legislature. We do not discover any indication that the legislature intended to adjust the standard set forth in the cases cited previously by enacting this statute. We note first that the statute speaks only to an intention not to relieve an owner or owners of a diversion system of any legal duties, obligations or liabilities incident to their ownership or operation of or any damage resulting from leakage or overflow of water or for floods resulting from the failure or rupture of the fill or structure for such works. The statute is not couched in terms of imposing a liability. Furthermore, § 41–5–101, W.S.1977, carries forward the language previously found in § 41–217, W.S. 1957. Adoption of the Tillerys' theory would result in holding, in effect, that the enactment of § 41–3–317, W.S.1977, operated to repeal § 41–5–101, W.S.1977, by implication.

We hold instead that the language upon which the Tillerys rely had only the effect of maintaining the liability of reservoir owners as defined in *Wheatland Irrigation District v. McGuire,* supra, and ditch owners as defined in *Pine Creek Canal No. 1 v. Stadler,* supra, *Taylor Ditch Company, Inc. v. Carey,* supra, *Jacoby v. Town of City of Gillette,* supra, and *Howell v. Big Horn Colonization Company,* supra. In those cases the concept of *Rylands v. Fletcher,* supra, as a standard for liability for ditch owners was rejected. The rationale was that in the arid west a ditch is not an unnatural use of the land, but is customary, and thus that the first prerequisite of *Rylands v. Fletcher,* supra, is not present. The thrust of these cases is that the "standard of conduct for a ditch or canal owner is that of a reasonable, prudent ditch owner." *Pine Creek Canal No. 1 v. Stadler,* supra, 685 P.2d at 17.

The district court properly applied the standard of negligence in deciding this case. The Tillerys do not argue that the evidence demonstrates any negligence on the part of West Side Canal, Inc. Their argument that § 41–3–317, W.S.1977, changed the standard of liability for ditch owners and operators does not hold water.

The judgment of the district court is affirmed.

URBIGKIT, Justice, specially concurring.

Disposition of this case invokes consideration of three relevant statutes and the comprehensive analysis and determination of Wyoming law as afforded by *Wheatland Irrigation District v. McGuire,* Wyo., 537 P.2d 1128 (1975).

Those statutes are:

(1) "Nothing in this act shall be construed to relieve an owner or owners of any reservoir, dam or diversion system of any legal duties, obligations or liabilities incident to their ownership or operation of or any damages resulting from the leakage or overflow of water or for floods resulting from the failure or rupture of the fill or structure for such works." Section 41–3–317, W.S.1977.

(2) "(a) As used in this act unless the context otherwise requires:

\* \* \* \* \* \*

"(v) 'Diversion system' means any canal, ditch or pipeline with a carrying capacity in excess of fifty (50) cubic feet of water per second of time; \* \*." Section 41–3–307, W.S.1977, Cum.Supp. 1985.

(Both enacted by Ch. 120, S.L. of Wyoming 1977.)

(3) "The owner or owners of any ditch for irrigation, or other purposes, shall carefully maintain the embankments thereof so that the water of such ditch may not flood or damage the premises of others." Section 41–5–101, W.S.1977, derived from territorial legislation in 1876. Also involved is the earlier reservoir liability statute, § 41–46, W.S.1957, repealed by Ch. 120, S.L. of Wyoming 1977 which enacted § 41–3–317, W.S.1977.

I would submit that the court now clearly misunderstands or misinterprets the legislative intent as incorporated in the 1977 legislation.

Contendedly, at least, the legislature in recodification and amendatory legislation always considers the course of prior litigative conclusion when involved in the subject of proposed legislation.

Consequently, when the legislature came to consider the 1977 statute, it had the text of § 41–46, W.S.1957, as defined by *Wheatland Irrigation District v. McGuire*, supra, wherein the absolute-liability phraseology was tempered by the exceptions provided by the case construction as determining that differing from an ordinary negligence status the burden of the defendant facility owner upon water escape was an affirmative defense:

" 'The defendant can excuse himself by showing that the escape was owing to the plaintiff's default or perhaps that the escape was a consequence of vis major or the act of God.' " 537 P.2d at 1133, quoting from McDonald, *The Rule in Rylands vs. Fletcher and its Limitations,* 57 Am.L.Rev. 549, 554.

The present decision of this court implicates question about the intent of the legislature to retain the law of Wheatland Irrigation as the rule in the dam-water-escape cases, which result is demonstrably contrary to legislative intent.

Having clouded the liability rules derived from § 41–46, W.S.1957, as enunciated by Wheatland Irrigation, the court then goes further to deny plain language which was intended by the legislature to bring the diversion systems into the ambient of the dam-failure-liability status. This second mistake follows by further analysis from the first erroneous construction of the statute. The legislature seems to have a continuing problem with judicial interpretation in water cases. See my dissent to denial of rehearing in *State, Board of Land Commissioners v. Lonesome Fox Corporation,* Wyo., 714 P.2d 783, 784 (1986).

The court by the decision disregards the phraseology and intent of § 41–3–317, from the legislative enactment which defined diversion systems to be included in the reservoir or dam classification for liability purposes in order to afford the differentiation from the smaller ditch of under 50 cubic feet per second capacity. There is no question in this case that the facility involved in the damage to plaintiff was a defined diversion system and would consequently come within the coverage of § 41–3–317.

The court thus misinterprets the legislative intent and thereby retains the diversion system under case law relating to ditches rather than major diversion systems as the differentiation was clearly intended by the 1977 enactment, Ch. 120, S.L. of Wyoming 1977.

The substantive difference is the question of burden of proof, wherein as to the dam the owner has the affirmative burden in order to establish a defense in a strict-liability mode for the defense as contrasted with the standard applied to ditches, now last found in *Pine Creek Canal No. 1 v. Stadler,* Wyo., 685 P.2d 13 (1984), which case enunciates the rule of liability as the burden for plaintiff with a case status comparable to the normal negligence proceedings.

The confusion of theory by the court in this case will occasion serious future problems in the analysis and resolution of litigation involving either a dam break or a diversion system failure.

I concur in result with the court, however, by accepting the determination of the trial court that the damage devolved from an act of God by virtue of the historically high snowpack for the area and the conse-

quent flooding which resulted as an uncontrolled event of nature.

I would hold that defendants met their burden of proof for the demonstration of the affirmative defense, pursuant to the teachings and critera of *Wheatland Irrigation District v. McGuire*, supra.